THE CUMBERLAND AND PENNSYLVANIA RAIL ROAD
COMPANY *vs.* CORNELIUS SLACK.

*Master and Servant—Discharge of an Employé during the
term of Service—Exclusion of Evidence because not Offered
at the Proper time—Pleadings—Set-off—Measure of Damages.*

The C. & P. R. R. Co. employed S. as its General Superintendent. The em-
ployment was by the year, commencing on the 1st of January of each year,
at an annual salary, payable monthly. He was so employed for the year
1874, and on the 9th day of April of that year, when he received the following
letter from the President of the company : "DEAR SIR—I am satisfied that
the interests of this company require a re-organization of its local manage-
ment by the concentration of its affairs in Allegany County under one head.
Accordingly I write by to-day's mail to the 2nd V. Presdt. to assume charge
of the rail-road. Recent circumstances have confirmed the opinion above
expressed. I presume you will prefer to retire by means of a resignation.
It is hereby understood that the same is accepted, and you will please tele-
graph me of its transmission, as I have instructed the 2nd V. Presdt. to take
charge of the rail-road immediately on the receipt of my letter. Please con-
fer with Mr. M. in turning over the papers in the Supt's Office." S. at once
acted in accordance with the terms of this letter by surrendering to M. the
Vice-President the entire charge and control of everything, and at once left
the service of the company, and had nothing to do with the affairs of the
road after that time. On the next day he addressed a note to the President
in which he writes: "I hereby resign the position of Genl. Supt. of the C.
& P. R. R. Co. and branch roads, to take effect at once." In an action of
assumpsit brought by the R. R. Co. against S. to recover money alleged to
be due by him to the company, he pleaded his discharge, and claimed to
set-off the amount due him for salary from the time of his leaving the service
of the company to the end of the year. HELD :

1st. That the letter of the President of the company operated as a positive
and peremptory dismissal of S. from the service of the company.

2nd. That the note of S. written the next day could not change its character
or construction, or show that he voluntarily resigned; nor could it be con-
strued as an acqui scence in his dismissal.

Cumb. & Penn. R. R. Co. *vs.* Slack.

The plaintiff by replication to the plea of set-off, justified the discharge of S. on the ground of his intemperate habits. After the plaintiff's witnesses had all been examined and its attorney announced to the Court that it had closed its case, and after the testimony of the defendant had been given and the case on his part had also been closed, the plaintiff called a witness who had already been examined for it in chief, and proposed to prove by him the alleged intoxication of the defendant. On objection to its admission the evidence was excluded. HELD:

1st. That the evidence was properly excluded.

2nd. That the question of its admission when offered was within the discretion of the Court below, and was not reviewable on appeal.

The plaintiff's fourth replication to the defendant's plea of set-off, alleged that the defendant on the 10th day of April, 1874, resigned, and refused further to perform his duty. To this the defendant rejoined by joining issue thereon. HELD:

1st. That according to the rules of the common law this replication should have been traversed.

2nd. But that under the provisions of the Code in regard to pleadings, the replication must be taken as if it had concluded with a verification, and the rejoinder "joining issue thereon" must be understood in the same manner as if the defendant had formally traversed it, and tendered an issue by a conclusion to the country.

3rd. That the above construction of said pleadings was not to be accepted as a sanction of so loose a style of pleading, but merely as declaring the failure of the defendant to traverse the averment of the replication to be no ground for reversal on appeal, the parties having proceeded to trial and the issue been found against the plaintiff.

Where a replication is ruled bad on demurrer, and an amended replication is filed setting out substantially the same matters, but no sufficient proof is offered to support the averments in either of said replications, the decision upon the demurrer is to be regarded as wholly immaterial.

The defendant in his above-mentioned plea of set-off based on his dismissal by the plaintiff, having averred, that he was illegally dismissed and prevented from discharging the duties of his position during the entire year, it was HELD:

1st. That it was unnecessary for him to aver performance of his duty during the time he remained in the service; and that the measure of damages to which he was entitled by reason of his discharge was fixed by the contract of employment, and was the stipulated salary for the year, less the amount

which had been paid him, and less the amount of the money of the Company which he might have actually received and not accounted for; and being therefore fixed by the contract was a legal set-off under the Code, Art. 75, secs. 12 and 13.

.2nd. That it would have been competent for the plaintiff in reduction of such damages to have offered evidence that the defendant actually earned, or might by due and reasonable diligence have earned wages in some other employment after his dismissal.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The defendant, among other pleas, filed the following, which is the only portion of the pleadings necessary to be set out at length, the other pleadings being sufficiently stated in the opinion of the Court:

4th. And for a fourth plea, the said defendant says, that he, the said defendant, was employed by the said plaintiff as General Superintendent of its railroads and of the Eckhart railroad for the period of one year, commencing therefor on the first day of January, in the year eighteen hundred and seventy-four, and ending therefor on the thirty-first day of December of said year, at and for the salary of five thousand dollars, and that the said defendant was at all times during said year, ready, willing and anxious to perform the services of said Superintendent as aforesaid, according to the terms of said employment, but that the said plaintiff unjustly and wrongfully, and without legal cause, discharged the said defendant from said service and said employment before the end of said year, and the said defendant after said dismissal and at all times during the continuance of said year, was ready and willing to perform said services and offered so to do, but was prevented from so doing by said plaintiff, the said defendant therefore avers, that the said plaintiff is indebted unto him, the said defendant, in the said sum of five thousand dollars, and that so much of said sum as

may be necessary therefor, the said defendant is willing to off-set against the plaintiff's claim.

At the trial the plaintiff offered the following prayers:

1. That if the jury find from the evidence in the cause that the defendant was the General Superintendent of the plaintiff prior to and up to the tenth day of April, 1874, and that it was his duty while so employed to receive and keep account of the moneys paid to the plaintiff, and that he did receive and keep account thereof, and that the defendant left the employment of the plaintiff on that day, and that Henry J. Kenah then took the place of the defendant in receiving said moneys and keeping of said accounts, and received and kept the account of the moneys so paid to the plaintiff, and that said Kenah, after taking charge of said accounts, had a conversation with the defendant, in which he told the defendant that the cash account did not balance and that cash was short, and that the defendant said that he knew it was, and that the defendant then gave said Kenah the two papers signed by him, and marked "Slack, $700, and Slack, $953.61," now in evidence, to account for the deficiency of said cash, and told said Kenah that he had never received any part of said last named sum, and that said defendant afterwards had a conversation with James A. Millholland, the Vice-President of the plaintiff, concerning said sum, in which said Millholland asked said defendant to explain said matter, and tell him who were the parties who owed said sum to the plaintiff, and also wrote the letters of said Millholland in evidence, and that the defendant refused to explain as requested, then the jury may find that the defendant received said sum of $953.61, and was liable to the plaintiff for the same in this action.

2. That if the jury find from the evidence that the defendant was in the employ of the plaintiff, as General Superintendent of its railroads, in the year 1869, and from that till the month of April, 1874, and that it was his

duty during that time to collect the revenues of the plaintiff, and to employ the other agents along said road, and that he had power to control them and to discharge them, if they failed to perform their duties, and that Godfrey Berkebill was one of said agents, subject to the power of the defendant, entrusted with the collection of part of its revenues, and that said Berkebill, in the year 1869, while acting as said agent, became largely indebted to the plaintiff for moneys collected by him as said agent and not paid over, and that said defendant took the note of said Berkebill for part of said sum, payable to the plaintiff, and that said defalcation then became known to the defendant, and that said Berkebill continued to collect and receive other moneys of the plaintiff between the year 1869 and 1872, with the knowledge of the defendant, which were also held by said Berkebill and not paid over, and that the defendant from time to time knew of the same, and did not take any legal steps to collect said moneys, and did not discharge said Berkebill, and that said defendant left the service of the plaintiff on the 10th of April, 1874, without informing the plaintiff of the misconduct of said Berkebill, or of his having said note, or taking any legal steps to enforce the collection of said moneys, and did not deliver said note to the plaintiff, and from the said 10th day of April, in the year 1874, neglected and refused to inform said plaintiff of said misconduct, although then requested by the plaintiff to do so, then the defendant did not do his duty as said General Superintendent, and was not ready and willing to perform the same, and cannot be allowed for the set-off as claimed by him, on the pleadings and evidence in this cause.

3. That if the jury find the facts stated in the second prayer to be true, then the defendant did not use due diligence to collect the said moneys from said Berkebill, and the plaintiff had good cause for discharging the defendant, and he cannot be allowed his said set-off.

4. That if the jury find from the evidence that it was the duty of the defendant, during his employment as said Superintendent, to collect the moneys due to the plaintiff from its several agents, who had received the same, and that he was such Superintendent prior to and from the year 1869, till the 10th of April, 1874, and that Godfrey Berkebill, one its agents, had collected and retained in his possession a large sum of money of the plaintiff in 1869, and that the defendant then, or shortly thereafter, knew of such collection and detention, and took the note of said Berkebill, payable to the plaintiff for said indebtedness, and that said Berkebill from 1869 to 1872, continued to receive other large sums of money of the plaintiff, and neglected to pay them over to the plaintiff, and that the defendant in the year 1872 and prior thereto knew of such collections and detentions, and permitted said Berkebill to remain in his said place as agent and to collect said moneys without informing the plaintiff of the same, or that he had taken said note until after the bringing of this suit, and used no legal means to collect said moneys from said Berkebill, and refused to inform the plaintiff of the misconduct of said Berkebill until after the end of the year 1874, although requested to do so during the month of May in said year, then the defendant did not perform his duty as said Superintendent and was not ready and willing to do so and cannot be allowed for set-off as claimed.

5. That if the jury find the facts stated in the plaintiff's fourth prayer, then the defendant did not use due diligence to collect said money from said Berkebill, and therefore the plaintiff had good cause for discharging said defendant, and the defendant cannot receive or be allowed his said set-off.

6. That the defendant cannot be allowed his set-off under his fourth plea in this cause.

7. That there is no sufficient evidence in the cause to prove that the defendant was ready and willing to per-

form his duty as General Superintendent as stated* in the proceedings in the cause.

8. That if the jury find from the evidence in this cause, that the defendant was employed by the plaintiff as General Superintendent and Manager of its roads from the 31st day of December, 1873, to the 31st day of December, 1874, at the salary of $5000 per year, payable monthly, and that on the 8th day of April, 1874, the defendant was discharged by the plaintiff, and his salary paid to the 31st day of March, 1874, yet the jury cannot find a verdict for the defendant, unless they shall further find that such discharge was wrongful and without cause.

9. That although the defendant was discharged by the plaintiff in the month of April, 1874, yet if they find that on the 10th day of April, 1874, the said defendant sent his resignation to the plaintiff, then they can find from such resignation an acquiescence in the plaintiff's discharge by the defendant, and if they do so find, and that the defendant never offered to go back into the plaintiff's employ, then the defendant cannot be allowed to set-off as against the plaintiff's claim such part of his salary as accrued after said resignation.

10. That if the jury find that the letter of Allen Campbell, the President of the plaintiff, of the 8th of April, 1874, was written to and received by the defendant on the 9th of April, 1874, and that the defendant thereupon wrote the note of the 10th of April, 1874, to said Campbell, then they may find that said defendant consented to and acquiesced in the order and proposition of the said letter of said Campbell, and if they do so find, the defendant cannot be allowed his set-off after that time.

11. That if the jury find from the evidence in the cause, that the defendant was in its employ as General Superintendent from the year, 1869, till April 1874, that it was his duty to receive and collect its revenues from the different agents of the plaintiff, during that time, that

Godfrey Berkebill was one of said agents intrusted with the collection of part of its revenues during that time, that said Berkebill, in the year 1869, became indebted to the plaintiff in a sum of more than $600 for money so collected, and neglected and refused to pay over the same, and that said defendant knew of said defalcation shortly after it occurred, and took the note of said Berkebill for the same, and that said Berkebill continued to receive other moneys of the plaintiff from that time until the year 1872, and neglected and refused to pay them over to the plaintiff, and that in the month of January, 1874, there was more than $900 so due from said Berkebill to the plaintiff, and that defendant had knowledge of said several defalcations shortly after they occurred, and that the defendant had the power during all that time to discharge said Berkebill and did not do so, and did not inform said plaintiff of said defalcation, and that he left the service of the plaintiff in April, 1874, and took said note with him, and did not then or at any time prior to the bringing of this suit, deliver said note to the plaintiff, or inform it of the existence of said note, and did not collect said money, and did not inform said plaintiff of the existence of the said defalcation during the year 1874, or at any time before the bringing of this suit, although requested to do so by the plaintiff about the month of May, 1874, but refused to do so till after the bringing of this suit, then it is their duty to find that the defendant did not perform his duty under the contract pleaded in this cause, and the plaintiff had good cause for discharging the defendant, and that he was not ready and willing to do so as alleged, and the defendant is not entitled to his set-off.

12. And if they find the facts above stated to be true, then it is their duty to find that the defendant did not use due diligence in the collection of said money.

And the defendant offered the following prayers:

1. That if the jury find from the evidence in the cause that on the first day of January, 1874, the plaintiff and defendant entered into and made a contract and agreement by which the plaintiff agreed to employ, and did employ the defendant, as the General Superintendent of its railroads in Allegany County, Maryland, for and during the year 1874, commencing therefor on the 1st day of January, and ending on 31st day of December in said year, and that by said contract the plaintiff agreed to pay to said defendant the sum of five thousand dollars for his annual services, and that the defendant, by said contract, agreed to perform and render to said plaintiff the said services for and during said year, at and for said salary, and that the defendant entered on the discharge of his duties under said contract, and that before the expiration of said year the plaintiff wrongfully dismissed him from its service and employment, and refused to permit him to perform said services, and that from and after such dismissal, and during the residue of said year, he was ready and willing to perform said services, and that said year terminated before the filing of his pleas of set-off in this case, and that the plaintiff has not paid to the defendant the whole of the said sum of five thousand dollars, then the defendant is entitled to off-set against the plaintiff's claim so much of said five thousand dollars as the jury may find remains unpaid, that will equal the plaintiff's claim.

2. That if the jury find from the evidence in this cause that on the first day of January, 1874, the plaintiff and defendant entered into and made a contract and agreement, by which the plaintiff agreed to employ, and did employ the defendant, as the General Superintendent of its railroads in Allegany County, Maryland, for and during the year 1874, commencing therefor on the first day of January, and ending on the 31st December in said year, and that by said contract the plaintiff agreed to pay the said defendant the sum of five thousand dollars for his annual

services, and that the defendant by said contract agreed to perform and render to said plaintiff the said services for and during said year, at and for said salary, and that the defendant entered on the discharge of his duties under said contract, and that before the expiration of said year the plaintiff wrongfully dismissed him from its service and employment, and refused to permit him to perform said services, and that from and after such dismissal, and during the residue of said year, he was ready and willing to perform said services, and that said salary was payable monthly, and that this suit was brought on September 29th, 1874, and that the sum of money mentioned in the plaintiff's bill of particulars, includes the sum of $700.00 retained by the defendant on account of said salary, and that there was that amount, and more accrued to and unpaid to the defendant on account of said salary, before the suit was brought, then the plaintiff cannot recover for the said seven hundred dollars in this action.

3. That if the jury find from the evidence in the cause that the defendant did not receive any part of the nine hundred and fifty-three dollars and sixty-one cents, being the amount of the Berkebill deficiency, and that said amount is a part of the money sought to be recovered in this action, then the plaintiff cannot, under the pleadings in this cause, recover from the defendant any part of the said $953.61.

4. That if the jury shall believe from the evidence in the cause that the defendant did not receive any portion of the $953.61, charged in the bill of particulars or account filed in the case, that under the pleadings in the case the plaintiff is not entitled to recover the said sum of $953.61, or any part thereof.

5. That if the jury shall believe from the evidence in the cause that the defendant was employed as General Superintendent of its railroads from the first day of January, 1874, at an annual salary of five thousand dollars

per year, payable monthly, and if they shall also believe from the evidence in the cause that the plaintiff wrongfully and without sufficient cause, dismissed the said defendant from his said employment as said Superintendent, that then the defendant would be entitled to claim and recover his salary from the time of said dismissal until the end of the year 1874, at the rate of five thousand dollars per year, payable monthly; and if the jury shall further find that his said salary at said rate was paid by the plaintiff to the defendant, up to and including the 31st of March, 1874, then the defendant would be entitled to the payment of said salary from the 1st day of April, 1874, until the end of that year; and if the jury shall further find that the defendant was at all times ready and willing to perform the duties of said Superintendent from the time of said dismissal to the end of said year, and if the jury shall find the facts as hereinbefore stated, then the plaintiff is not entitled to recover any portion of the said sum of seven hundred dollars, but the said sum of $700.00 will be a credit on the said year's salary.

The Court, (PEARRE and MOTTER, J.,) rejected the plaintiff's second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth prayers, and granted its first prayer with an amendment, as follows: Strike out all from and including the words "then the jury may find," and substitute the following, "is evidence for their consideration upon the question, whether the defendant did in fact receive said money; and if they do so find, the defendant is responsible to the plaintiff for the same."

The Court granted the defendant's third and fourth prayers, and rejected his first, second and fifth prayers, and in lieu thereof, granted another, marked "Instructions of Court," as follows:

The Court reject the first, second and fifth prayers of the defendant because they all submit to the jury a question of law, and in lieu thereof instruct the jury that there is no

evidence in this cause, under the pleadings, that the dismissal of the defendant, if the jury find he was dismissed by the plaintiff from its services, was done for sufficient cause. The plaintiff excepted.

The jury rendered a verdict for the defendant, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and ALVEY, J.

*J. H. Gordon,* for the appellant.

*R. Chew Jones* and *Wm. Walsh,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellant against the appellee. The declaration contains a count "for money had and received" and a count "on an account stated;" filed with the declaration was a bill of particulars, showing the nature of the plaintiff's demands. The defendant pleaded 1st, never indebted; 2nd, "payment;" 3rd and 4th, "*Set-off*," with a bill of particulars showing the set-off claimed. Then follows a protracted course of pleading on both sides; which, as some questions have been raised thereon, will be more particularly noted hereafter; first adverting to the facts out of which the controversy has arisen, and the substantial questions presented by the appeal.

It appears that the appellant employed the appellee as "the General Superintendent" of its railroads, in 1854. His employment was by the year, commencing for each year, on the 1st day of January and ending on the 31st day of December. He was so employed for the year 1874 at the annual salary of $5000, payable monthly, and continued so employed till the evening of the 9th of April, 1874; when, as he alleges, he was wrongfully discharged,

and hence he claims a set-off. This the appellant denies, insisting *first* that he resigned voluntarily, and secondly if discharged, that there was sufficient cause to justify the company in dismissing him.

At the time he left the service of the company he had in hand $700, received by him for the company, which he retained, and there was a deficiency or balance of $953.61 due the company from one of the agents named *Berkebill,* for which the appellant seeks to hold him responsible. These two sums making an aggregate of $1653.61 constitute the amount for which the suit was brought, as stated in the appellant's bill of particulars.

The salary of the appellee was paid for the months of January, February and March 1874—viz., $1250, which added to the sum of $700, retained by him, makes $1950, and this deducted from $5000, the salary for the year to which he claims to be entitled, leaves a balance of $3050, and this constitutes his claim by way of set-off.

There being no question or dispute, with regard to his employment for the year 1874 at the salary before stated ; the questions presented for our consideration are 1st. Was he discharged, or did he resign voluntarily?

2nd. If discharged, was the discharge illegal and without sufficient cause?

The first question is raised by the *fourth* replication to the *fourth* plea, wherein it is alleged that "the defendant on the 10th day of April 1874, resigned his position as General Superintendent, and refused further to perform the duties thereof." The evidence on this subject is the following letter addressed to the appellee by the President of the company :

"New York, April 8th, 1874.

" C. Slack, Esq. Supt. Mount Savage:

" Dr. Sir, I am satisfied that the interests of this company require a reorganization of its local management,

by the concentration of its affairs in Allegany Co. under one head. Accordingly, I write by to-day's mail to the 2d. V. Prest. to assume charge of the rail-road. Recent circumstances have confirmed the opinion above expressed. I presume you will prefer to retire by means of a resignation. It is hereby understood that the same is accepted, and you will please telegraph me of its transmission, as I have instructed the 2nd V. Prest. to take entire charge of the rail-road immediately on receipt of my letter. Please confer with Mr. Millholland in turning over the papers in the Supt. office.

"Yours Respty,

"Allen Campbell,<br>Prest."

This letter was received by the appellee on the 9th of April 1874, he went immediately to the office of Mr. Millholland, the 2nd V. Prest. and showed him the letter. He told the appellee that he had just received a copy of it from Mr. Campbell, inclosed in a letter written to him by Mr. Campbell, instructing him to assume and take charge of the railroads, and the office of the appellee, and the books and papers belonging to the office.

The appellee further states in his testimony, "I at once acted in accordance with the terms of Mr. Campbell's letter, by surrendering at once to Mr. Millholland the entire charge and control of everything. I at once left the service of the company, which was in the evening of the 9th of April 1874, and I never performed any duties, or gave any orders after that time. Mr. Millholland took immediate charge of everything, I had nothing to do with the affairs of the road, after that time."

On the next day the appellee addressed the following note to Mr. Campbell, Prest.:

"Mount Savage, Md., April 10, 1874.

"Allen Campbell, Esq.

"Dear Sir.—I hereby resign the position of Gen'l Supt. of the Cumberland and Penna. Rail-road Co. and branch roads, to take effect at once.          Yours truly,

                    C. Slack."

The appellee states in his testimony that he "wrote this note because he was ordered to do it in Mr. Campbell's letter, dated 8th of April 1874."

In our opinion that letter operated as a positive and peremptory dismissal of the appellee from the service of the company; his note written the next day cannot change its character or construction, it does not show that he voluntarily resigned, nor can it be construed as acquiescing in his dismissal. He had surrendered the office the day before, in obedience to what he properly understood to be Mr. Campbell's orders, and Mr. Millholland had already assumed full charge of the same. So that when his note of April 10th was written, he had in fact no office to resign. Construing these papers in the light of all the circumstances, it seems impossible to escape the conclusion that the appellee correctly understood Mr. Campbell's letter as a positive and final discharge, leaving him no option or choice in the matter; and therefore the *ninth* and *tenth* prayers of the appellant were properly refused.

. 2nd. Had the appellant legal cause for discharging the appellee?

In the *sixth replication* to the *fourth plea* two causes are alleged in justification of the discharge.

1st. That the appellee after his employment became and was accustomed to be intoxicated, and thereby became unfit for the performance of the duties required of him as Superintendent, &c.

There is no evidence in the cause to support this averment; it appears by the *first* bill of exceptions, that after

the appellant's witnesses had all been examined, and its attorney had announced to the Court that it closed its case, and after the testimony of the appellee had been given, and the case on his part had also been closed, that the appellant then called Mr. Millholland, a witness who had already been on the stand and had been examined for the appellant in chief, and proposed to prove by him the alleged intoxication of the appellee.

Objection being made to the offer of the testimony at that stage of the case, it was excluded, and we think very properly.

The *onus* was upon the plaintiff, and the rule is well settled that "being entitled to begin and reply, and having begun it is not permitted to go into half of its case and reserve the remainder, but is obliged to develop the whole." 1 *Greenleaf Ev.*, *sec.* 74, *and cases cited in note* 3. The effect of a different rule would be needlessly to protract trials at *nisi prius*, or make them interminable. But the question of admitting the testimony when offered, was in the discretion of the Circuit Court, not reviewable on appeal. *Williams vs. Brailsford*, 25 *Md.*, 127 ; *Bannon vs. Warfield*, 42 *Md.*, 39.

2nd. As further cause for the discharge of the appellee, it is alleged in the *sixth replication to the fourth plea,* that the defendant failed to discharge his duty in not collecting the balance or deficiency due the company from the agent Berkebill, and in failing to report such deficiency to the company.

The evidence given by the appellee is that it was not his duty to report this deficiency to the company, that he had made every effort to collect it, but that he could not collect it and had no authority to bring suit for it. This testimony is uncontradicted; Mr. Millholland testifies that "it had been Mr. Slack's custom since 1869, to collect all the moneys of the company from the different agents along the line of the railroad, and pay them over to the

company, but the witness knew of no instructions given to the defendant to that effect, or upon that subject; and that Berkebill's duty was to collect the money due for freights received and delivered at the Frostburg office, and to pay them over to Mr. Slack for the plaintiff.''

Upon this testimony, it was not error for the Circuit Court to instruct the jury that ''there is no evidence in this cause, under the pleadings, that the dismissal of the defendant, if the jury find he was dismissed by the plaintiff from its service, was done for sufficient cause.'' And for the same reason the second, third, fourth, fifth, eighth, eleventh and twelfth prayers of the appellant were properly refused.

The first prayer of the appellant was granted with a modification of which the appellant complains. It relates to the alleged liability of the appellant for $953.61, the deficiency in the cash account. As originally offered the prayer asked an instruction to the jury that from the facts enumerated therein, if found by them, '' they may find that defendant received said sum of $953.61, and was liable to the plaintiff for the same in this action.'' The Court modified the prayer by striking out the latter part, and substituting in lieu thereof an instruction that the facts enumerated in the prayer, if found by the jury, was ''evidence for their consideration, upon the question whether the defendant did in fact receive said money, and if they do so find, the defendant is responsible to the plaintiff for the same.''

We discover no error in this, the several matters stated in the prayer were not conclusive, but furnished some ground for the inference which the appellant sought to deduce, it was correct therefore to instruct the jury, that they furnished evidence proper for their consideration, upon the question whether the money had in fact been received by the defendant. The instruction is not materially dif-

ferent from that asked in the prayer, and the appellant was not injured by the modification.

The appellee is not liable, in this action, for the money unless he had received it, and there was therefore no error in granting the *third and fourth* prayers of the defendant.

· The seventh prayer of the appellant asks an instruction "that there is no sufficient evidence in the cause to prove that the defendant was ready and willing to perform his duty as General Superintendent, as stated in the pleadings." The appellee says in his testimony, "I was ready and willing to perform my duties, and the services of my office, and I held myself at the time of my discharge, and at all times during the balance of the year, in readiness to perform the services as General Superintendent." This testimony is uncontradicted, the appellant's seventh prayer was therefore properly refused. In the argument of the case several questions have been presented upon the pleadings, which it is necessary to notice.

The plaintiff's *fourth replication to the fourth plea* alleged that the defendant on the 10th day of April 1874 resigned, and refused further to perform his duty. To this the defendant rejoined, by joining issue thereon. It is contended that this was error, that he ought to have traversed. There is no doubt that according to the rules of pleading at the common law the course suggested by the appellant was required. But under our Code much of this strictness has been abolished  .Code, Art. 75, sec. 3, provides that "any declaration which contains a plain statement of the facts necessary to constitute a ground of action hall be sufficient, and any plea necessary to form a legal defence shall be sufficient without reference to mere form ; this to apply to replications, rejoinders and all subsequent pleadings." By the subsequent sections it is not necessary to state any formal commencement or conclusion to any plea. No special demurrer is allowed in civil cases, nor

any general demurrer for a mere informality, provided such statement is sufficient in substance.

Under these rules all the pleadings in the cause were conducted, and by them they must be tested.   The *fourth replication to the fourth plea* must be taken as if it had concluded with a verification, and the rejoinder "joining issue thereon" must be understood in the same manner as if the defendant had formally traversed it, and tendered an issue by a conclusion to the country, according to the old forms.   We are not to be understood as sanctioning this loose method of pleading.   Unquestionably the defendant ought to have traversed the averment in the replication, but the omission to do so in a more formal manner, is no cause for reversal; as the parties proceeded to trial, and the issue was found against the plaintiff.

It is immaterial to inquire whether the *fifth replication* to the *fourth* plea, was or was not sufficient, it was ruled bad on demurrer, and the plaintiff amended by filing a *sixth* replication to the same plea, setting out substantially the same matters.   But no sufficient proof was offered to support the averments in either of these replications; and the decision upon the demurrer was therefore wholly immaterial.

It is objected that the *fourth plea* was insufficient, this question arises upon the defendant's demurrer, which mounts up to the first error.

It is contended that the plea is defective, and insufficient because it does not aver performance of his duty by the defendant during the time he remained in the service, before he was discharged.   But we think this objection is not well taken, and that the plea is sufficient in this respect.

According to its true construction, it avers that the defendant was illegally dismissed, and prevented from discharging the duties of his position during the entire year, the averment being that "the said defendant after said

dismissal and at all times during the continuance of said year was ready and willing, &c. and offered so to do, but was prevented from so doing by the said plaintiff,'' &c.

But it is objected that the claim or demand alleged in the plea is not a proper subject-matter of *set-off;* because it is in its nature unliquidated. This question is presented by the appellant's sixth prayer.

. The right of set-off is given by the Code, Art. 75, secs. 12 and 13. In this case the set-off claimed is a liability of the same nature as that for which the suit is brought, it arises upon the contract existing between the parties, and is for the breach thereof by the appellant. The measure of damages to be recovered is fixed by the contract, and as decided in *Jaffray vs. King,* 34 *Md.,* 217, is the stipulated salary for the year, less the amount which had been paid him, and less the amount of the money of the company, he may have actually received and not accounted for; there being no evidence in the case that he actually earned or might by due and reasonable diligence have earned, wages in some other employment after his dismissal. Such evidence it would be competent to offer, and would diminish to that extent the claim of the appellee; but in the absence of all evidence of that kind, the sum to which he is entitled is, as before stated, fixed by the contract, and is under the Code a legal set-off. It was not error therefore to reject the appellant's sixth prayer.

*Judgment affirmed.*

(Decided 21st June, 1876.)