# THE HIPPODROME COMPANY OF BALTIMORE.
## *vs.*
## CHARLES E. LEWIS.

*Contracts of employment : breach ; damages ; loss of salary ;
other employment.*

A servant wrongfully discharged has only two remedies open,
to him at law which he may pursue immediately on his dis-
charge—first, he may treat the contract as continuing, and
bring a special action for damages for its breach; or, secondly,
if his wages are not paid up to the time of his discharge, he
may treat the contract of hiring as rescinded, and sue his mas-
ter on a *quantum meruit.*                              p. 157

But upon a *quantum meruit* the servant can only recover for
the services actually rendered.                        p. 157

A contract for a period of two years, at a salary of $60 per
week, payable weekly, by which the plaintiff was faithfully to
render services as manager of the defendant's theatre, during
the period of the contract, is an entire and indivisible contract;
and for breach of it by the defendant in discharging the plain-
tiff before the expiration of the year, or in refusing to allow
him to work, a right of action immediately arises—not for
unearned wages as such, but for damages for a breach of the
contract, the measure of which would be the stipulated salary
for the stipulated period of two years, less the amount the
plaintiff actually earned, or by due and reasonable diligence
might have earned after his dismissal.                 p. 157

Technical errors in pleading must be prejudicial to the ap-
pellant before they can justify a reversal on that ground. p. 162

A contract with the plaintiff for two years, faithfully to ren-
der his services as the manager of the defendant's theatre, with
no provision requiring the devotion of all his time thereto, does
not necessarily exclude him from similar employment with any
other theatre.                                        p. 163

In such a suit, the plaintiff may offer in evidence notice sent by the defendant to other theatre companies stating that the plaintiff had been dismissed for incompetency and other good and sufficient reasons, in order to explain his difficulty in getting other employment.                    pp. 163-164

*Decided January 19th, 1917.*

Appeal from the Superior Court of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Henry H. Dinneen* (with whom was *W. Stuart Symington, Jr.,* on the brief), for the appellant.

*J. Edward Tyler, Jr.,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The action in this case was brought to recover damages for the breach of a written contract, set out in the declaration, entered into by the appellee and the appellant company. By it the defendant agreed to pay to the plaintiff a salary of sixty dollars per week, payable weekly, for the period of two years from the date of the contract (December 1st, 1914), as compensation for his services as manager of the Hippodrome Theatre, in the City of Baltimore. The plaintiff therein agreed in consideration of his salary to accept said employment "and to faithfully render said services as manager of said theatre during the period" of the contract. The declaration alleges that the plaintiff "entered into the serv-

ices of the defendant under said contract and performed his duties thereunder until the 3rd day of July, 1915; that the said defendants broke said contract in that they refused to permit him, the said plaintiff, to perform his part of said contract, and also refused to pay him the salary to which he is entitled under said contract from and after July 3rd, 1915"; and "that by reason of said breach of said contract he has been greatly injured and damaged in a large amount of money, to wit, $4,414.28."

The defenses relied on, as shown by the defendant's pleas, were that the "defendant discharged the plaintiff (first) because the conduct of the plaintiff as manager of said defendant's theatre was such that it was injurious to the interest . of said defendant to continue to employ him," and second, "because the plaintiff was incompetent and not qualified to manage the defendant's theatre." Both of these pleas were demurred to, but the demurrer was overruled, and after replication and joinder of issue thereon, the case proceeded to trial and resulted in a verdict and judgment for the plaintiff, from which judgment this appeal is taken.

The defendant by its ninth prayer asked the Court to instruct the jury that "the plaintiff is not entitled to recover damages except for the period intervening between the date of the plaintiff's dismissal July 1st, 1915, and the date of the verdict, May 24th, 1916, less such sums as the jury shall find the plaintiff has earned or should have earned during the period." This prayer was rejected by the Court below, and the correctness of its ruling thereon is before us for review.

The declaration was filed on the 16th day of July, 1915, and it is conceded that the salary of the plaintiff was paid to him to the time of his dismissal. The contract in this case is very similar in its terms to the one found in *Olmstead* v. *Bach,* 78 Md. 132, where the contract was held to be an entire and not a divisible one. This Court in that case said, speaking through JUDGE McSHERRY, that: "The contract being entire, and having created the relation of master and

servant and the latter having been, as averred in the pleadings, dismissed before the expiration of the term for which he had been engaged, what redress was open to him? Obviously but one remedy for the recovery of the whole damage sustained by him. In *Keedy* v. *Long*, 71 Md. 389, this Court said: 'A servant wrongfully discharged has only two remedies open to him at law, either of which he may pursue immediately on his discharge. First, he may treat the contract as continuing, and bring a special action against the master for breaking it by discharging him; and this remedy he may pursue whether his wages are paid up to the time of his discharge or not; or, secondly, if his wages are not paid up to the time of his discharge, he may treat the contract of hiring as rescinded, and sue his master on a *quantum meruit* for the services he has actually rendered. These two alternative remedies are the only ones open to him. *Mayne on Damages*, 159. Upon a *quantum meruit* he can only recover for the services actually rendered. *Archard* v. *Hornor*, 3 Carr. & P. 349; *Smith* v. *Hayward*, 7 Adol. & El. 544. In an action for damages for a breach of a contract he will be entitled to recover the actual damages he has sustained, in addition to the wages earned; and in case he has by diligence been unable to secure other employment, during the entire term, he can recover the entire wages, less the amount he has actually earned during the interim, or the amount he might have earned by the exercise of proper diligence in seeking for employment in the same or similar business."

Among the defenses relied on in *Olmstead* v. *Bach, supra,* the defendant pleaded that on the date therein named they dismissed the plaintiff from their services and at the same time paid him all wages or salary due to him under the contract to the end of the week terminating four days after his dismissal; that nine days after said dismissal the plaintiff brought suit against the defendants before a justice of the peace upon the indentical contract and cause of action sued

on in the case then before the Court, and that thereafter the plaintiff recovered judgment in that suit for the sum of fifty dollars and costs, which judgment was fully paid and satisfied by the defendant before the pending action was brought. The Court said: "There was but one dismissal and but one breach, and the plaintiff could not split up his cause of action, recovering a part of his damages in one suit and the remainder afterwards in other suits for that single breach. It is an ancient and familiar rule of law that only one action can be maintained for the breach of an entire contract, and the judgment obtained by the plaintiff in one suit may be pleaded in bar of any second proceeding. *Sedgwick on Damages,* 224; *Dugan* v. *Anderson,* 36 Md. 584. It was the appellant's plain duty to include all that belonged to that cause of action—that one breach—in the first suit, so that one proceeding and one recovery should settle the rights of the parties. It would be at his own risk and peril if he negligently or ignorantly omitted a part of what might properly have been embraced in the cause of action in the first suit. Or as expressed by LORD CAMPBELL, in *Clossman* v. *Lacoste,* 28 Eng. L. & Eq. R. 140: 'If the contract is entirely broken, and the relation of employer and employed put an end to, I agree that the party suing ought to allege in his declaration the whole *gravamen* that he suffers by such breach of contract, and that he may recover therein all the damages that may ensue to him in consequence.' Again, as clearly put by the Supreme Court of Ohio in *James* v. *Allen Co.,* 44 Ohio St. 226: 'As a result of the authorities as well as upon principle we are satisfied that in such a contract as the one in the case at bar, where the employee is wrongfully dismissed, but all wages actually earned up to that time are paid, the only action the employee has, whether he brings it at once, or waits until the entire period of time has expired, is an action for damages for the breach of the contract; and the measure of damages will be the loss or injury occasioned by that breach, and one recovery upon such claim whether

the damages be denominated loss of wages or damages for breach, is a bar to a future recovery.' *Wood's Mas. & Serv.,* 246. * * * We hold, then, that the contract declared on is entire and indivisible. That for the breach of it by the defendants in discharging the plaintiff before the expiration of the year, or in refusing to allow him to work, a right of action arose, not for unearned wages or salary as such, but for damages for a breach of the contract, the measure of which damages would be the stipulated salary for the stipulated period of one year, less the amount the plaintiff actually earned or might by due and reasonable diligence have earned after his dismissal. *Jaffray* v. *King,* 34 Md. 223." *McGrath* v. *Marchant,* 117 Md. 480; *Baltimore Baseball Club* v. *Pickett,* 78 Md. 378.

It is said in *Labatt's Master and Servant,* sec. 363: "The doctrine applied in England and many of the American States is that, in cases where the action is tried before the expiration of the term covered by the contract, the servant is entitled to have his damages assessed with reference to the entire term. * * * The courts which take this view decline to attach a controlling importance to the circumstance which has by others been regarded as a conclusive reason for refusing to assess damages *in futuro,* viz., that various uncertain elements must necessarily enter into an estimate of the probable extent of the loss which the servant will sustain as a result of his being prevented from earning the stipulated wages during the unexpired portion of the term. * * * The same kind of difficulty is encountered in the assessment of damages for personal injuries. All the elements which bear upon the matters involved in the prognostication are to be considered by the jury, and from the evidence in each case they are to form an opinion upon which all can agree, and to which, unless it is set aside by the Court, the parties must submit. The liability to have the damages which he inflicts by breaking his contract so assessed is one which the defendant must be taken to have understood when he wrongfully

discharged the plaintiff, and if he did not wish to be subjected to it he should have kept his agreement.'"

It was said in *Cutter* v. *Gillette,* 163 Mass. 96: "The plaintiff was hired for five years from April 25, 1892, and was discharged about the middle of July, 1892. He brought suit on November 10, 1892, and the verdict was rendered on March 15,. 1894. The verdict assessed at the sum of $3,-180.95 the plaintiff's whole damages for breach of the contract of hiring, and stated that of this amount $1,392.95 was the damage to the time of trial. The defendant concedes that the plaintiff is entitled to recover damages for an entire breach so far as such damages can be ascertained, but contends that, as the trial occurred before the expiration of the contract period, it was impossible for the juiy to ascertain or assess the damage for the unexpired portion of the contract period subsequent to the time of trial. * * * It has been held in Vermont that, if there has been such a breach as to authorize the plaintiff to treat it as entirely putting an end to the contract, he may recover damages for an entire nonfulfilment, and is not limited to what he has actually sustained at the time of his bringing suit or the time of trial. *Remelee* v. *Hall,* 31 Vt. 582. And in Maine, in an action for breach of a contract of hiring brought before the expiration of the contract period, it was held that the just recompense for the actual injury sustained by the illegal discharge was the stipulated wages less whatever sum the plaintiff actually earned, or might have earned, by the use of reasonable diligence. *Sutherland* v. *Wyer,* 67 Maine, 64. Such would seem to be the rule in Pennsylvania. See *King* v. *Steiren,.* 44 Penn. St. 99; *Chamberlin* v. *Morgan,* 68 Penn. St. 168. * * * The plaintiff's cause of action accrued when he was wrongfully discharged. His suit is not for wages, but for damages for the breach of his contract by the defendant. For this breach he can have but one action. In estimating his damages the jury have the right to consider the wages which he would have earned under the contract, the prob-

ability whether his life and that of the defendant would continue to the end of the contract period, whether the plaintiff's working ability would continue, and any other uncertainties growing out of the terms of the contract, as well as the likelihood that the plaintiff would be able to earn money in other work during the time. But it is not the law that damages which may be larger or smaller because of such uncertainties are not recoverable."

In other jurisdictions, however, it has been held that damages were recoverable only in respect to the period preceding the trial, but as this is the first time that this question has ever been directly presented to this Court, we are inclined to accept the reasoning found in the cases from which we have quoted, and will adopt the same as a law of this State, especially in view of our decisions holding that only one action can be maintained for the breach of an entire contract, which may be instituted immediately upon the breach of the contract, and the judgment obtained by the plaintiff in one suit may be pleaded in bar in a second proceeding. Moreover, we think the language in *Clossman* v. *Lacoste, supra,* adopted by this Court in *Olmstead* v. *Bach, supra,* that as the contract is entirely broken and the relation of employer and employed put an end to * * * that the party suing ought to allege in his declaration the whole *gravamen* that he suffered by such breach of contract and that he may recover thereon *all the damages that may ensue to him* in consequence, strongly point to the conclusion we have reached. For should the plaintiff be permitted to recover for all damages that may accrue to him in consequence of the breach, it would seem to include not only the consequence, accruing prior to the trial of the case, but those that might follow it to the time of the expiration of the contract. Therefore the Court in rejecting the ninth prayer of the defendant committed no error, and what we have said of the Court's ruling thereon is equally applicable in sustaining the correctness of the Court's ruling upon the plaintiff's fourth prayer, at least so far as the defendant is affected thereby. The second

prayer of the defendant which was granted, instructed the jury that the defendant was to be allowed whatever it should find the plaintiff might have earned by use of ordinary and reasonable efforts in seeking employment from the date of his discharge until December 4th, 1916, the time when his contract expired.

This prayer granted the defendant correctly states the law in a case like the one before us and is consistent with our ruling upon its ninth prayer. The plaintiff's first prayer, we think, was properly granted and we do not understand that it is seriously assailed by the defendant; and we find no defects in the plaintiff's second prayer.

The objection urged against the plaintiff's third prayer in which the jury is instructed that the burden rested upon the defendant to show by a preponderance of evidence that the plaintiff was not competent nor qualified to manage the defendant's theatre, and if the minds of the jury are in a state of equipoise or equilibrium, then the verdict must be for the plaintiff, is that it ignores the other defense set up by its first plea. There was as we have said a demurrer to this plea which was overruled, and we are disposed to think that the demurrer to that plea should have been sustained. The defense set up by it is that the plaintiff is not entitled to recovery because his conduct was injurious to the interest of the defendant. Such injury is not alleged to have been the result of his *misconduct*. The conduct complained of may have been the result of a mistaken policy in the management of the company's affairs or at least so regarded by the directors. If so at most it could amount to no more than incompetency, in which event it is covered by the defense under the second plea and thus the granting of the third prayer would not at least be a harmful error.

The defendant's first and second prayers were granted. Its remaining eight prayers were rejected. The defendant's fourth and tenth prayers were properly rejected for the reasons assigned in sustaining the plaintiff's third prayer. Its

fifth, sixth, seventh and eighth prayers relate to his alleged hostile conduct to the defendant after his connection with it had ceased, that is, after his dismissal which resulted in a breach of the contract for which suit is brought. These we think were all properly rejected.

There are thirty exceptions to the ruling on the evidence. The first six exceptions are to questions asked the plaintiff in relation to the management of the Victoria Theatre, and whether or not under the contract of the defendant he would sever his connection with the Victoria and give his entire time to the defendant company. By the terms of the contract he was faithfully to render services as manager of said theatre, but it contains no provision that he should give it his entire time, and thus it was not necessary, considering the character of his employment, that he should give his entire time to it or quit his services to the Victoria company, unless it conflicted in the proper performance of his duties with the defendant company, and therefore we fail to see that the evidence given in response to such questions, which were to the effect that he was not to give his entire time to the Victoria Company, and that in performing such services to the last-named company it in no way conflicted with the services he was to render under the contract to the defendant company, was erroneously admitted. The defendant at least was not injuriously affected by this testimony.

In the seventh exception he was asked, did the defendant company or any of its officers or employees do anything to your knowledge that would militate against your getting a position? And upon his answer that they did, he was asked, in the eighth, what did they do, and in response to that question, answered that they sent a letter out to a number of persons not interested or concerned in the change of management of the defendant company and when that letter was produced its admission was excepted to, which forms the ninth exception. This letter dated July 14th, 1915, was as follows: "For your information Mr. Charles E. Lewis, form-

erly manager of the Hippodrome Theatre, has recently been discharged for incompetency and for other good and sufficient reasons." It was his duty if wrongfully dismissed to use due and proper diligence in obtaining other employment in order to lessen the damages for which the defendant company would be liable resulting from his dismissal, and this evidence we think was admissible in explaining his difficulty, if any he had, to obtain employment more lucrative than that which he had obtained.

The 10th, 11th, 12th, 13th, 14th and 15th were exceptions to the plaintiff's evidence in relation to the difficulty and difference existed between him and the president of the company in relation to the management of its affairs. Some of the answers which are excepted to are exceedingly long and it would greatly prolong this opinion if we were to insert them in full. Some of the evidence admitted under these exceptions probably should not have been admitted, but we do not regard the admission of them as harmful errors, and this is true of the remaining exceptions.

The declaration is inartifically drawn, and we are not to be understood as approving it, but as the evidence shows that the plaintiff was ready and willing to perform his duties under the contract, and was prevented from doing so by the the act of the defendant, we do not feel justified under the circumstances of the case, and in view of the prayers granted on the part of the defendant, in reversing the judgment for said defect in the *narr.*

The judgment will therefore be affirmed.

*Judgment affirmed, with costs to the appellee.*