## ATHOLWOOD DEVELOPMENT COMPANY *v.* FREDERICK HOUSTON

[No. 10, April Term, 1941.]

442

*Decided April 30th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*Ellis Peregoff*, with whom was *Alfred J. O'Ferrall, Jr.*, on the brief, for the appellant.

*Herbert L. Grymes*, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Atholwood Development Company a Maryland corporation, has appealed from a judgment recovered by Frederick Houston in the Court of Common Pleas of Baltimore City upon a verdict for damages for alleged wrongful discharge from employment.

Houston testified that in October, 1939, he was engaged by Bramwell Kelly to superintend the construction of a row of houses on Frederick Road in Baltimore. He conferred thereafter on a number of occasions with Kelly and his father, G. LaMar Kelly, concerning their plan to incorporate and apply to the government for a loan. He studied the plans of the architect, recommended certain persons for the jobs of excavation, construction, and plumbing, and hired a number of laborers. The company was incorporated in December, 1939. But in February, 1940, about the time the loan was obtained, he learned that he was not wanted for the work.

The appellant contends that it was not bound by the alleged contract of employment. According to the record, Bramwell Kelly acted as one of the incorporators, attended the first meeting of the incorporators, and instructed Houston in regard to the employment of carpenters. When first questioned in the court below, he swore that he could not remember whether he had served as a director of the corporation; but after he was shown a document bearing his signature as a director, he recalled that he had served in that capacity. G. LaMar Kelly, president of the corporation and the owner of one-half of the stock, swore that he had not authorized the alleged employment; yet he admitted on cross-examination that it was upon his own request that his son Bramwell had taken Houston to the home of their architect to enable him to study the plans and calculate the amount of lumber required for the buildings.

Justice Story, in discussing the authority of officers and agents of corporations, said in the United States Supreme Court: "Anciently it seems to have been held, that corporations could not do anything without deed. * * * Afterwards the rule seems to have been relaxed, and they were, for conveniency's sake, permitted to act in ordinary matters without deed; as to retain a servant, cook, or butler * * *, and gradually this relaxation widened to embrace other objects. * * * The technical doctrine, that a corporation could not contract, except

under its seal * * * must have been productive of great mischiefs. * * * Accordingly it would seem to be a sound rule of law, that wherever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts made by its authorized agents are express promises of the corporation; and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie." *Bank of Columbia v. Patterson's Administrator,* 7 Cranch 299, 305, 306, 3 L. Ed. 351, 353. It is now generally accepted that an officer of a corporation may enter into contracts of employment and bind the corporation without any express authority conferred by formal authorization of the board of directors. Such authority may be inferred from the manner in which the officer has been permitted to transact the business of the corporation. A general manager or a managing agent of a corporation ordinarily has implied authority to hire employees when the employment is usual and necessary and within the scope of the corporate purpose. *Slocum v. Seattle Taxicab Co.,* 67 Wash. 220, 121 P. 67; *Reynier v. Associated Dyeing & Printing Co.,* 116 N. J. L. 481, 184 A. 780; 13 *Am. Jur., Corporations,* secs. 917, 936, 984. We find that there was legally sufficient evidence in this case to justify its submission to the jury. A case should not be taken from the jury on the ground of total failure of evidence, if there is any evidence, however slight, legally sufficient as tending to prove the claim. Before a prayer for a directed verdict can be granted, the court must assume the truth of all the evidence tending to sustain the suit and of all inferences of fact fairly deducible from it, even though such evidence may be contradicted in every particular by the opposing evidence in the case. *Brocato v. Serio,* 173 Md. 374, 381, 196 A. 125, 128.

The measure of damages in an action for wrongful discharge is *prima facie* the employee's salary for the remainder of the period of employment. But the employer may undertake to mitigate the damages by show-

ing that the employee has earned wages from other employment, or that he could have secured other employment by using proper effort. The general rule is well established in this state that a wrongfully discharged employee is entitled to recover damages to the extent of the stipulated salary for the stipulated period, less the amount he actually earned during the period, or the amount he might have earned after his discharge by the exercise of reasonable diligence in seeking other employment in the same or similar business. *Hamill v. Foute*, 51 Md. 419, 429; *Olmstead v. Bach*, 78 Md. 132, 145, 27 A. 501, 505; *Hippodrome Co. v. Lewis*, 130 Md. 154, 157, 100 A. 78, 80. What constitutes reasonable diligence is a question of fact depending upon the circumstances of each particular case. The manner in which a person of ordinary diligence would presumably act under similar circumstances is the standard by which the court should determine whether this duty was properly performed. *Gillespie v. Ashford*, 125 Iowa 729, 101 N. W. 649. If a discharged employee sits supinely idle with folded hands, he cannot insist upon the full payment of his wages. He should try to diminish the loss resulting from the breach of contract by making such efforts to secure employment as an average person would make at that particular time and place. *Cumberland & Pennsylvania R. R. Co. v. Slack*, 45 Md. 161, 180; 1 *Labatt, Master and Servant*, secs. 331, 360, 393, 399.

The trial court properly refused the defendant's prayer to instruct the jury that if the plaintiff, after he knew he would not be employed by the defendant, failed to seek employment as a superintendent of construction elsewhere, then the verdict must be for the defendant. In an action by an employee for wrongful discharge, the possibility that he could secure similar employment by the exercise of reasonable diligence operates to reduce the amount of recovery, but not to defeat entirely the employee's claim. *Troy Fertilizer Co. v. Logan*, 96 Ala. 619, 12 So. 712. In other words, such a defense is made in mitigation of damages, and not as a complete bar to the

cause of action. Thus, even though it may appear from the evidence that the employee could have secured similar employment paying a salary as large as that stipulated in the broken contract, nevertheless the court should refuse to take the case from the jury, since the employee may be entitled to actual or nominal damages for the breach. *Williams v. Chicago Coal Co.*, 60 Ill. 149, 156 In the present case, for illustration, the plaintiff claimed that he waited several months for the work to start and also rendered a number of preliminary services for the development company. Moreover, a wrongfully discharged employee is entitled to reimbursement for his reasonable and necessary expenses incurred in searching for other employment. *Rench v. Hayes Equipment Mfg. Co.*, 134 Kan. 865, 8 P. 2nd 346.

The trial court granted the plaintiff's prayer instructing the jury that if they found for the plaintiff, they should allow him "the contracted price for his services per week for the period of the employment contracted for." This instruction was improper because it ignored the possibility that the plaintiff could have mitigated the damages by working elsewhere in similar employment. For Houston refused one job and disregarded several other possible jobs while waiting for the work at Atholwood, and he distinctly declared that a capable superintendent of construction can "usually go and get work right away." An exception to the general rule as to mitigation of damages is made in the case of a salesman or part-time servant when the money earned by him after discharge could likewise have been earned by him without a violation of his duty under the contract if he had not been discharged. *Jaffray v. King*, 34 Md. 217; *Wandell Chocolate Co. v. Goldsmith*, 142 Md. 148, 120 A. 372; 1 *Labatt, Master and Servant*, sec. 390; 39 *C. J., Master and Servant*, sec. 149. But under ordinary circumstances, as in the case at bar, the court should instruct the jury that if they find for the plaintiff, they should allow him the stipulated salary, less the amount he actually earned during the period of the contract, or the amount he might

448

have earned in the same or similar business by the exercise of reasonable diligence in seeking other employment from the date of his discharge to the expiration of the contract. *Baltimore Baseball Club & Exhibition Co. v. Pickett,* 78 Md. 375, 389, 28 A. 279, 281; *H. J. McGrath Co. v. Marchant,* 117 Md. 472, 480, 83 A. 912, 914; *Hippodrome Co. v. Lewis,* 130 Md. 154, 162, 100 A. 78, 81.

Finding error in the instruction as to the measure of damages allowable to .the plaintiff, we reverse the judgment in this case and award a new trial.

*Judgment reversed, and new trial awarded, with costs.*