CHARLES W. HAMILL, and JAMES F. TRAYHERN, trading as HAMILL & COMPANY *vs.* AUGUSTUS M. FOUTE.

*Construction of a Contract with a Travelling Agent and Salesman—Prayers—Measure of Damages.*

By a written contract between the appellants and the appellee, the appellants agreed to employ the appellee as their travelling agent and salesman for twelve months, and to pay him for that period the sum of eight dollars per week and his travelling expenses, and the appellee agreed to serve the appellants faithfully and honestly in the above capacity, to the best of his knowledge and ability. The appellants further agreed to pay the appellee a commission of five per cent. upon all net sales effected by him over the sum of ten thousand dollars. It appeared that the appellee made one trip of about nine weeks, and that after he was notified by the appellants that they would employ him no longer in the above capacity, he accepted a new employment from them, in which he continued for three weeks, and was then discharged. In an action brought by the appellee to recover damages for the alleged breach of the contract by the appellants it was HELD:

1st. That the travelling expenses embraced the appellee's board bills for the period of twelve months, as well as the cost of his transportation, such as fare on the railways, &c., while he was actually travelling.

2nd. That the fact that the appellee's efforts to effect sales did not prove more successful, and that another person who was afterwards employed in the same capacity had succeeded in making larger sales, was no evidence that the appellee did not serve the appellants honestly, faithfully and to the best of his knowledge and ability.

3rd. That the appellee's acceptance of the new employment did not operate as a rescission and abandonment of the written contract, and could not be construed as a waiver of his rights under it, as it was the appellee's duty not to remain idle during the year, but to seek employment and thereby diminish the loss and damage resulting from the breach of the contract.

4th. That the appellee's prayer, which stated that under the contract, the appellants were not entitled to prevent the appellee from continuing to act as their travelling agent and salesman before the expiration of the term of the contract, merely because he effected but a small amount of sales; and that if the jury believed that the appellants discharged him from their service in that capacity merely for that reason, he was entitled to recover what he would have earned under said contract, if he had not been so discharged, less such amount, if any, as they might believe he had been paid by the appellants, or might reasonably have earned after the appellants refused to permit him longer to act as their travelling agent and salesman, was free from objection.

5th. The appellee's prayer which stated that if the jury found for the appellee, he was entitled to recover as part of his damages "five per cent. on all net sales over and above $10,000, which they believed he would have effected if he had not been discharged," was erroneous, as such an element of damage was altogether speculative, contingent and too uncertain to form a basis in establishing the damages.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court. The contract therein mentioned is as follows:

This agreement, made this tenth day of May, 1877, by and between Charles W. Hamill & Co., manufacturers of silver plated ware, of the first part, and A. M. Foute, of the other part, both of Baltimore City, State of Maryland: Witnesseth, that the said A. M. Foute does hereby agree to faithfully and honestly serve said Charles W. Hamill & Co., in the capacity of travelling agent and salesman, to the best of his knowledge and ability. At all times to hold himself subject to their order and direction, and to render an account of all expenses incurred by him on account of said Charles W. Hamill & Co., for their inspection and approval, and to forward to them all moneys, notes, drafts, and other evidences of indebtedness belonging to said Charles W. Hamill & Co., as they may direct. And under no circumstances to contract for or enter into any

bargain that may involve said Charles W. Hamill & Co. to the value of anything, without obtaining their consent in writing thereto, except such as may be necessary for said Foute's actual travelling expenses. For and in consideration of the above, said Charles W. Hamill & Co. agree, on their part, to pay said A. M. Foute's travelling expenses, whilst in their employ, and the further sum of eight dollars per week, for each and every week, for the term of twelve months, accounting from the tenth day of May, 1877—the above weekly sum of eight dollars to be in full for all services rendered by said A. M. Foute to said Charles W. Hamill & Co. until annulled, as hereinafter provided.

Chas. W. Hamill & Co. further agree, that as an inducement to said A. M. Foute for his zeal and energy in extending their business, to keep an account of all sales and orders made by or through him, directly or indirectly, and when the same shall amount to the net sum of ten thousand dollars, they will pay said Foute a commission of five per cent. upon all net sales over and above said ten thousand dollars. And it is understood, that in the event of the failure of said Foute to render such services as above agreed upon, said Charles W. Hamill & Co. reserve the right to cancel and make null this agreement.

CHARLES W. HAMILL & Co.,<br>A. M. FOUTE.

*Exceptions.* —At the trial the plaintiff offered the following prayers:

1. That under the contract of 10th of May, 1877, between the plaintiff and the defendants, which has been offered in evidence, the defendants were not entitled to prevent him from continuing to act as their travelling agent and salesman before the tenth day of May, 1878, merely because he effected but a small amount of sales; and if the jury believe that the defendants discharged him from their service in that capacity merely for that

reason, he is entitled to recover what he would have earned under said contract, if he had not been so discharged, less such amount, if any, as they may believe he has been paid by the defendants, or might reasonably have earned after the defendants refused to permit him longer to act as their travelling agent and salesman.

2. If the jury believe that after the plaintiff had entered upon the performance of his duties as travelling agent and salesman of the defendants, under the contract of 10th May, 1877, which has been offered in evidence, they discharged him from their employment in that capacity before the tenth day of May, 1878, for no other reason than that he made but a small amount of sales, then he is entitled to recover $8.00 per week from the time of such discharge to the tenth day of May, 1878, the amount of board he has been compelled to pay during that interval, and which he would have saved by the payment of his travelling expenses, and five per cent. on all net sales, over and above ten thousand dollars, which they may believe he would have effected, if he had not been so discharged, less such amount, if any, as they may believe he has been paid by the defendants, or might reasonably have been earned, after the defendants refused to permit him longer to act as their travelling agent and salesman ; provided, that the jury shall believe that plaintiff, if sent out to sell goods, would have sold bills to exceed in all $10,000 during the year of his employment.

3. There is no evidence that the plaintiff waived his rights, or any of them, under the contract of May 10th, 1877, which has been offered in evidence.

The defendants offered four prayers. The first is stated in the opinion of the Court; the second it is not necessary to state; and the third and fourth are as follows:

3. If the jury believe from the evidence that the plaintiff did not faithfully, honestly and to the best of his knowledge and ability, serve the defendants as travel-

ling salesman, whilst in the defendants' employ, the defendants had the right to annul and cancel said contract, and if the defendants did in fact, and for the reason above stated, annul said contract, the jury should find for the defendants.

4. If the jury believe from the evidence that after the making of the written contract set out in the declaration, and offered in evidence in this case, to wit: in July, 1877, the plaintiff and defendants entered into a new agreement by parol for the employment of the plaintiff as salesman for the defendants, upon an agreed compensation of eight dollars per week, and a commission of ten per cent. upon the gross sales the plaintiff might be able to make for the defendants, then the Court instructs the jury that such new agreement rescinded the written contract, and the jury should find for the defendants.

The Court (Garey, J.,) granted the plaintiff's prayers and the defendants' second prayer, and rejected the defendants' first, third and fourth prayers. The defendants excepted and the verdict and judgment being for the plaintiff for $1100, with interest and costs, the defendants appealed.

The cause was argued before Bartol, C. J., Bowie, Miller and Alvey, J.

*John J. Wade,* for the appellants.

The appellants insist that upon a proper construction of the written agreement, and the construction as appears by the facts proved, which was given to it by the contracting parties, the appellants were not required to keep the appellee employed constantly in travelling for them, but only at certain seasons, and for parts of the year; and they were not bound to pay appellee's expenses, including his board, except while so employed.

1st. They assign as error, the refusal of the Court to grant appellants' first prayer, and the granting of ap-

pellee's second prayer, wherein the jury were instructed that appellee was entitled to recover the amount of board he had been compelled to pay for the said period.

2nd. They assign as error the instruction to the jury contained in the appellee's second prayer, to the effect that appellee was entitled to recover as part of his damages, five per cent. on all net sales over and above $10,000 which they believe he would have effected, because said instruction is contradictory and liable to confuse the jury, and because the amount of net and not gross sales was the condition upon which the appellee could have been entitled to any commissions on sales.

By this instruction the Court does not as in *Jenkins vs. Byrne,* 8 *Md.,* 132, lay down any rule to govern the jury in estimating the amount of future sales upon which commissions are to be allowed, but throws open a wide door for purely speculative and conjectural damages based upon conjectural sales. *Abbott vs. Gatch,* 13 *Md.,* 333, 334; *Lentz vs. Chateau,* 42 *Penn. St.,* 438.

By the terms of the said written contract the five per cent. commission agreed to be paid, was not in consideration of his services, but was a *bonus* to be allowed appellee to stimulate his zeal and energy in building up and extending their business, and from which when accomplished, the appellants might well suppose they would derive a benefit which would admit of their allowing him the commission provided for.

3rd. The Court erred in refusing to grant appellants' fourth prayer, and in giving the instructions to the jury contained in the appellee's third prayer. It is admitted that the testimony as to the new contract for the services of appellee as salesman is conflicting. The appellee denies that any contract was made with appellants except the written contract, upon which this action is based. The appellants on the contrary, both swear positively that a new contract for appellee's services was made upon new

and different terms, and that the same was accepted and agreed to by appellee, and that he remained for three weeks in their service under this new contract. Such new arrangement and contract for appellee's services as salesman in the city and vicinity, at $8 per week, and ten per cent. commission upon all sales which he might make, was not only inconsistent with, but absolutely impossible of performance, if the original contract was to remain in force. *Howard vs. Wilmington R. R. Co.*, 1 *Gill*, 311; *Hargrave vs. Conroy*, 10 *Ind.*, 284; *Munroe vs. Perkins*, 9 *Pick.*, 298, 305; *Watkins vs. Hodges*, 6 *H. & J.*, 45; *Cumber vs. Wane*, 1 *Smith's L. Cases*, 627, (7 *Am. Ed.;*) *Delaroix vs. Buckley*, 13 *Wend.*, 71; *Lattimore vs. Harson*, 14 *John.*, 330.

It was error for the Court to instruct the jury that there was no evidence that the appellee had waived his rights, or any of them under the original contract.

However slight or inconclusive the evidence on this subject, still it was the province of the jury to weigh it and determine upon the force and effect of the testimony which was before them, tending to prove that a new and different contract had been entered into by both parties. *Jones vs. Jones*, 45 *Md.*, 144 *and* 154; *Hooper vs. Citizens' Nat. Bank*, 47 *Md.*, 88, and other cases cited.

4th. By the express terms of the original written contract the appellants had the right to annul and cancel the same, in the event of the failure of the appellee to render such services as he had contracted to render, and it was clearly error for the Court to refuse to grant the appellants' third prayer.

*John H. Thomas*, for the appellee.

1st. Under the contract and evidence, the appellants were bound to permit him to act as their travelling agent and salesman for the period of twelve months. They had no right to terminate the contract sooner, merely because

they thought or actually found that the performance of it would be unprofitable to them.

Their refusal to permit him to fulfil it was a breach, and they are liable for damages therefor to such an amount as he could have realized by the performance of it.

The appellee's first prayer was, therefore, properly granted, and the appellants' first prayer properly refused. *Black vs. Woodrow*, 39 *Md.*, 194, 213–14–15 ; *Dugan vs. Anderson*, 36 *Md.*, 567, 587.

2nd. There was no evidence that he had not faithfully, honestly and to the best of his ability served the appellants in that capacity as long as they permitted him so to do. The appellants, who were both examined as witnesses, did not insinuate such a suspicion. The appellants' third prayer was, therefore, properly refused.

3rd. After they refused longer to permit him to act in that capacity, it was his duty to accept any other proper employment he could procure, for the purpose of making his damages as small as possible. His accepting that afterwards offered by them was, therefore, no waiver of his right under the contract. The appellee's second and third prayers were, therefore, properly granted, and the appellants' fourth prayer was properly refused. *Cumberland and Penna. R. R. Co. vs. Slack*, 45 *Md.*, 180 ; *Dugan vs. Anderson*, 36 *Md.*, 567, 583 ; *Borden Mining Co. vs. Barry*, 17 *Md.*, 419 ; *Borden Mining Co. vs. Downs*, 17 *Md.*, 432.

4th. That the appellee was properly allowed such commissions as he might have earned, as an element of damages. *Abbott vs. Gatch*, 13 *Md.*, 332–3 ; *Warfield vs. Booth*, 33 *Md.*, 63, 75 ; *Dugan vs. Anderson*, 36 *Md.*, 567, 587 ; *Jenkins vs. Byrne*, 8 *Md.*, 132.

BARTOL, C. J., delivered the opinion of the Court.

The appellants were manufacturers and sellers of Britannia and silver plated ware in the City of Baltimore.

By a written contract dated the 10th day of May, 1877, made by them with the appellee, they agreed to employ him as their travelling agent and salesman, for the term of twelve months, accounting from the date of the contract, upon the terms stated in the written agreement (*ante p.* 420.) The appellee entered upon the performance of his duties under the contract, made one trip through the Southern States, which occupied about nine weeks. On his return in July 1877, the appellants not being satisfied with the results of his trip, refused to continue him longer in their employ as travelling agent and salesman; and this suit was brought to recover damages for the alleged breach of the contract by the appellants.

After the evidence on both sides had been given, *three* prayers were offered on the part of the appellee, all of which were granted; and the appellants asked *four* prayers, of which the *second* was granted and the others refused; they excepted, and the verdict and judgment being against them, have appealed.

The questions for our consideration arise upon the prayers.

Those offered by the defendants which were rejected will first be considered. 1st. Their *first* prayer asserts the proposition, that under the written contract, the defendants were not required to keep the plaintiff travelling for the whole period of twelve months, but only for so much of said time and for such seasons as the defendants might determine, and that the defendants were not required to pay the expenses of board and living for the plaintiff, except whilst he was actually engaged in travelling as their agent and salesman. This prayer we think is based upon a misconstruction of the contract. The employment was for twelve months, and the obligation of the defendants was to pay for that period the sum of $8 per week, and the travelling expenses of the plaintiff. The contract contains no stipulation reserving to the de-

fendants the right to suspend or discontinue at pleasure, the employment of the plaintiff in the business in which he was engaged; nor is there any stipulation that the compensation agreed on shall be suspended or changed in whole or in part during the period embraced in the contract. This compensation as fixed by the contract was $8 per week and the plaintiff's travelling expenses, which last embraced the cost of his board as well as the cost of his transportation, such as fare on the railways, &c. These last expenses would not of course be incurred, when the plaintiff was not actually travelling; but his board bills the defendants were bound to pay for the whole period of time mentioned in the contract.

This prayer was therefore properly refused.

3rd. There was no error in refusing the defendants' *third* prayer, there being no evidence in the cause that the plaintiff did not faithfully, honestly and to the best of his ability serve the defendants as travelling salesman, while in their employ. The only evidence on this subject is the uncontradicted testimony of the plaintiff himself.

The fact that his efforts to effect sales did not prove more successful, and that the witness Wolf who was afterwards employed in the same capacity had succeeded in making larger sales, is no evidence that the plaintiff did not serve the defendants honestly, faithfully, and to the best of his knowledge and ability.

4th. It appears in the evidence that after the plaintiff was notified by the defendants that they would employ him no longer as travelling agent and salesman, he accepted a new employment from them in which he continued for three weeks and was then discharged. The proposition in the defendants' *fourth* prayer is, that this operated as a rescission and abandonment of the written contract. To this proposition we do not assent. After the defendants refused to continue the plaintiff longer in their employ under the contract of May 10th, it was his duty, not to

Hamill & Co. *vs.* Foute.

remain idle during the year, but to seek employment and thereby diminish the loss and damage resulting from the breach of the contract. 17 *Md.*, 420, 430; 34 *Md.*, 222, 223; 45 *Md.*, 163. His acceptance of a new employment either with the defendants, or with other persons after he was prevented by the act of the defendants from performing the contract of May 10th, cannot be construed as a waiver of his rights under the original contract. The Court below was right in refusing the defendants' *fourth* prayer, and in granting the *third* prayer of the plaintiff.

The *first* prayer of the plaintiff is free from objection; but in our opinion there was error in granting his *second* prayer, as to the measure of damages.

By this prayer the jury were instructed that if they found for the plaintiff, he was entitled to recover as part of his damages, "*five per cent.* on all net sales over and above $10,000, which they may believe he would have effected if he had not been discharged."

Such an element of damage was altogether speculative, contingent and uncertain. There was no rule or standard furnished by the evidence or laid down by the Court, to govern the jury in estimating the amount of sales which the plaintiff might have made, and in the nature of things no such rule could have been furnished.

This was left entirely to the mere speculation and conjecture of the jury, and was too uncertain to form a basis in estimating the damages. *Abbott vs. Gatch*, 13 *Md.*, 314.

For this error the judgment must be reversed and a new trial ordered.

*Judgment reversed, and*
*new trial ordered.*

(Decided 17th June, 1879.)