DEVEREUX *v.* BERGER

[No. 180, September Term, 1968.]

*Decided April 30, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Joe M. Kyle,* with whom were *Heise, Kyle & Jorgensen* on
the brief, for appellant.

*James J. Cromwell,* with whom were *John P. Arness* and
*Raymond E. Vickery, Jr.,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant (Devereux) was held in contempt of the Circuit
Court for Montgomery County for violation of the terms of an
interlocutory injunction. We shall affirm the action of the trial
court.

Devereux was the president of Metropolitan Acceptance Cor-
poration (Metropolitan), a Maryland corporation. Appellee
(Berger) was a secured creditor of Metropolitan. In October of
1966 Berger apparently did not entertain as high an opinion of
Metropolitan, its president and its operations as he did when he
loaned $60,000.00 to that corporation on March 3, 1964, under a
security agreement which gave him a continuing security inter-
est in certain assets of that corporation. Berger brought suit for
his debt in the Circuit Court for Montgomery County. After
Devereux was twice returned *non est,* Berger entered this suit
in the Circuit Court for Montgomery County against Metropoli-
tan. At his request that court passed an order providing in part:

"ORDERED, that the Defendant, METROPOLI-
TAN ACCEPTANCE CORPORATION, and its
President, C. KEMP DEVERUEX, (sic) and all its
agents, servants, employees, attorneys, successors and
assigns and any and all persons in action, concert or

participation with it, be and they are hereby enjoined and restrained, from the time this Order shall be served upon them until a hearing hereon, from any liquidation dissipation or dissolution of the assets of the Defendant corporation and from engaging in any course of conduct designed to impair, diminish or destroy the present assets of the corporation, and from taking any action in fraud of creditors, including the Plaintiff herein, and from performing any acts which are in derogation of the Security Agreement referred to in the Bill of Complaint herein, and it is further

* * *

"ORDERED, that a copy of this Bill of Complaint, Order thereon, Motion for Ex Parte Injunction, and Order Granting Ex Parte Injunction be served upon the Defendant by the quickest possible means,

"PROVIDED, the Plaintiff first furnish bond to the State of Maryland in the sum of Fifty Thousand Dollars ($50,000.00) and

"PROVIDED, that the Defendant is given leave to move on not more than two days notice on the Plaintiff for a hearing hereon, and

"PROVIDED, that this Injunction shall expire on the 28th day of October, 1966."

The *ex parte* injunction was extended on October 26 to November 7. Counsel for Metropolitan consented to an interlocutory injunction which was passed on November 4, 1966, in the following terms:

"ORDERED, that the Defendant, METROPOLITAN ACCEPTANCE CORPORATION, and its President, C. KEMP DEVEREUX, and all its agents, servants, employees, attorneys, successors and assigns and any and all persons in action, concert or participation with it, be and they are hereby enjoined and restrained, from the time this Order shall be served upon them until a hearing hereon, from any liquidation, dissipation or dissolution of the assets of the Defendant corporation and from engaging in any course of con-

duct designed to impair, diminish or destroy the present assets of the corporation, and from taking any action in fraud of creditors, including the Plaintiff herein, and from performing any acts which are in derogation of the Security Agreement referred to in the Bill of Complaint herein, and it is further

"ORDERED, that the Defendant is given leave to move on not more than two days notice on the Plaintiff for a hearing herein."

The facts in this case are not disputed. A certified public accountant examined the books as of August 31, 1966, (prior to any injunction) and as of April, 1967. There was a reduction in an account receivable from Blair TV (apparently another company of Devereux) in the intervening period without any consequent increase in cash. In fact, the amount of cash declined in that period by approximately $2000.00. In April of 1967 there was on deposit the sum of $6432.00 with American Savings and Trust Company. On a later attachment by Berger on a judgment he recovered against Metropolitan in another proceeding, this had become approximately $800.00. The explanation of Devereux was that about $4000.00 of this sum was in the possession of his secretary. With reference to the remainder he said:

"I would assume, and here again I am not prepared to give exact data on it, but in the process of converting our accounts receivable into cash—of course we are an operating company, the amounts of money coming in today are not very considerable and they are generally not sufficient to cover the operating cost—I would assume and I feel fairly certain that a good deal of this money will be expended on the normal operations of the corporation."

The examination showed a suspense account of $7043.00 as of April, 1967. In September, 1966, there were two checks drawn to Devereux totaling $6500.00. An account at Perpetual Building Association in the amount of $2948.00 was closed. Those three items totaled $9448.00. In October, 1966, entry in the cash re-

ceipts records showed a deposit of $2405.00 from those funds leaving a balance of $7043.00, the amount of the April, 1967, suspense account. At one point there was a claim that this sum of $7043.00 was in a safe deposit box in American Security and Trust Company in Washington. When entry was gained to that box in December, 1967, the sum of $1043.00 was found in an envelope marked with the words "Metropolitan Acceptance Corporation". Devereux testified that the full sum of $7043.00 had been in the safe deposit box at the time of an earlier deposition, but he drew $6000.00 of it for legal expenses, part of it being paid to his counsel (not present counsel) and part by way of court costs, etc.

There was testimony of sale of certain of the office equipment of Metropolitan to Blair TV. It was testified that in each instance the equipment was sold to Blair for 10 to 15 percent above what dealers had offered to pay.

There were other facts presented, including the fact that certain of the corporate assets were moved from time to time within the Washington metropolitan area, the trial judge having been critical of the alleged removal of certain of the assets from Maryland to Virginia. Blair TV operated in Maryland, Virginia and the District of Columbia. Neither injunction purported to forbid such movement. We do not regard these facts as necessary to a decision in this case.

Devereux was held in contempt by the trial judge who directed that he should purge himself of the contempt by paying $600.00. He appeals to this Court contending that the trial court should have considered the intention of the parties at the time of their consent to the issuance of the injunction. He stated in the trial court and here insists strongly that it was his understanding and the understanding of his then attorney that he was permitted to carry on a normal business operation and, therefore, the intention of the parties in consenting to the passage of the interlocutory injunction should be considered. Devereux insists that in interpreting the consent decree the rules of contract law are applicable and the contract should be construed in accordance with the intention of the parties.

30A Am. Jur., *Judgments*, § 149 states:

"A judgment by consent, being in the nature of a

contract, should be construed as a written contract, duly signed and delivered, embodying therein the terms of the said judgment. A judgment by consent is presumed to be entered in the light of all the existing circumstances of the litigation. The operation and effect of the judgment must be gathered from the terms used therein and the order should not be extended beyond the clear import of such terms, nor can it be supplemented by agreements which are not a part of it, unless attacked for fraud or mistake."

Maryland contract law is to the effect that where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed. *Lawless, Adm'x v. Merrick,* 227 Md. 65, 71, 175 A. 2d 27 (1961); *Weber v. Crown, etc., Corp.,* 214 Md. 115, 121, 132 A. 2d 857 (1957); *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 100, 122 A. 2d 563 (1956).

The trial judge stated:

"The testimony discloses that Mr. Devereux is a college graduate and so, of course, he is charged with and has complete knowledge of the English language and must be held accountable for what this Order of Judge Pugh's imports. It says that he and his company are enjoined and restrained from the time of this order November 4, until a hearing thereon from any liquidation, dissipation, or any dissolution of the assets of the defendant corporation and — although there has not been emphasis on this, I now emphasize that the order says—'from engaging in any course of conduct designed to impair, diminish or destroy the present assets of the corporation.' This to me is clear, unambiguous and important."

Devereux has pointed to no ambiguity in the injunction. If we were to assume, *arguendo,* that there was agreement between the parties that Metropolitan should conduct its normal operation, there certainly would not be embraced within such normal operation payment of a very substantial portion of cash assets

to counsel and the placing of a very substantial portion of the remaining cash assets into the hands of the secretary to one of the principal officers of Metropolitan. Devereux clearly violated the terms of the injunction.

*Judgment affirmed; appellant to pay the costs.*