## SACHSE v. WALGER

[No. 340, September Term, 1971.]

*Decided May 16, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, ▮ SINGLEY and SMITH, JJ.

*Ernest C. Trimble,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellant.

*Risque W. Plummer* and *John C. Griffin,* with whom were *Griffin & Plummer* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This dispute has arisen over the interpretation of an agreement of property settlement, entered into between the parties prior to the entry of a decree of divorce *a vinculo.*

The appellant, Gay D. Sachse, formerly Gay D. Walger, and the appellee, Louis M. Walger, III, were married on 9 July 1953 and divorced on 2 November 1967. In 1964, they had embarked on the construction of a residence on land which they owned as tenants by the entirety. The property, which ultimately cost some $65,-000.00, was financed by a conventional mortgage loan of $25,000.00 from Union Trust Company of Maryland, on which both were obligated and by demand loans which ultimately aggregated $40,900.00 also made by Union Trust on the note or notes of Mr. Walger, secured by collateral belonging to him.

When the marriage commenced to crumble, Walger and his wife entered into an agreement of property settlement on 19 October 1967. The agreement, which was designed to encompass support and maintenance of the wife and custody and support of the children, contained elaborate provisions respecting the residence property.

In pertinent part, the agreement provided:

> "5. The Husband shall pay to the Wife, for her own maintenance and support, in lieu of alimony and not by way thereof, until her death, his death or her remarriage, whichever shall first occur, the additional sum of Six Thousand, Six Hundred ($6,600.00) Dollars per year, or Five Hundred Fifty ($550.00) Dollars per month, subject, however, to credits for payment of mortgage installments and real property taxes on the property 1513 Sherbrook Road,

Lutherville, Baltimore County, Maryland, and home owner's insurance premiums thereon, as hereinafter set forth.

"6. (a) The fee simple property known as 1513 Sherbrook Road in Lutherville, Baltimore County, Maryland, is owned by the parties as tenants by the entireties and is now occupied by the Wife and children. The Wife shall have the right to continue to occupy said property with the children, rent free, as long as she desires to do so, whether before or after an absolute divorce between the parties, but not after the Wife's remarriage, if she should remarry following a divorce.

"(b) During the continued occupancy of the property by the Wife, the Husband shall make all monthly payments on account of the existing mortgage and pay all real estate taxes and premiums on home owner's insurance thereon; provided, however, that he shall receive credit therefor in his alimony payments to the Wife, which said payments shall be reduced on a monthly basis by the equivalent of 1/12th of the annual total of the mortgage payments, real property taxes and home owner's insurance premiums.

\* \* \*

"(e) The property shall be sold at private sale and the net proceeds equally divided between the parties upon the happening of any one of the following events:

\* \* \*

"(iii) Upon her [the wife's] remarriage following a divorce.

\* \* \*

"(f) In computing the net proceeds of sale of said property, there shall be deducted from the purchase price, besides the real estate commission, mortgage and all expenses of sale, the entire balance remaining at the time of sale, principal and interest, of a certain collateral

note made by the Husband and held by The Union Trust Company, not to exceed, however, the sum of Forty Thousand ($40,000.00) Dollars. The parties agree that the proceeds of said loan were used in the construction of the house on the property and that said obligation shall be paid from the gross proceeds of sale and thus treated as in the nature of an equitable mortgage against the property, but limited in amount as hereinabove provided."

At the time of the execution of the agreement, Walger owed the Union Trust Company $89,900.00, of which $40,900.00 had been borrowed between July, 1964, and October, 1965, and had been used in the construction of the house. An additional $51,000.00 had been borrowed between October, 1965, and July, 1966, of which $2,000.-00 had been repaid in 1966, reducing the unpaid balance as of 19 October 1967, to $89,900.00.

On 2 November 1967, Mr. and Mrs. Walger were divorced. In September 1968, Mr. Walger refinanced his collateral loan by borrowing $89,000.00 from The Equitable Trust Company, and paying $89,900.00, the balance of his Union Trust Company loan. Mrs. Walger remarried on 29 August 1970, and on 29 April 1971, settlement was made for the Lutherville property, which sold for $87,000.00 As of this date, Mr. Walger's loan from The Equitable Trust Company had been reduced to $79,-600.00.

An argument ensued as to the manner in which the net proceeds of sale were to be disbursed. Mrs. Sachse's contentions can be briefly summarized:

(i) As of the date of sale no "certain collateral note made by the Husband and held by The Union Trust Company, not to exceed, however, the sum of Forty Thousand ($40,000.00) Dollars", as identified by the property settlement agreement was in existence, and therefore, no deduction could be made from the sale proceeds for the satisfaction of this note.

(ii) Alternatively, if any deduction is to be made, it should be for $29,700.00, because Mrs. Sachse was entitled to a credit for one-half of the amount of $10,300.00 paid by Mr. Walger in reduction of the principal amount of the loan between the date when the Union Trust Company loan was paid and 29 April 1971, when settlement was made for the house.

(iii) Finally, Mrs. Sachse contends that she is entitled to be reimbursed by Mr. Walger for one-half of the payments made from 2 November 1967 (the date of her divorce), to 29 August 1970 (the date of her remarriage) in reduction of the mortgage and in payment of real estate taxes and premiums for homeowners' insurance on the Lutherville property, since these payments were credited in their entirety against the monthly payments which Mr. Walger was obligated to make for her support.

As a consequence of this altercation, $42,500.00 of the proceeds of sale of the Lutherville property were placed in escrow, and the balance, after the payment of the mortgage and expenses, was equally divided between Mr. Walger and Mrs. Sachse. Thereafter, Mr. Walger instituted a declaratory action in the Circuit Court for Baltimore County for a determination of his rights under the property settlement agreement. From an order declaring that Mr. Walger is entitled to $42,235.27 of the escrowed fund and that Mrs. Sachse is entitled to $1,594.-00, Mrs. Sachse has appealed.[1] Because we find no reason to disturb the result reached below, we shall affirm.

We agree with the trial court that Mrs. Sachse's first

1. The total of these amounts, $43,829.27, obviously exceeds the escrowed fund of $42,500.00. The trial court directed that this be made the subject of an adjustment between the parties. The discrepancy was the result of other minor adjustments made by the court below which are not challenged by Mrs. Sachse on appeal.

contention is wholly without merit. The plain fact is that as of 19 October 1967, when the agreement of property settlement was signed, there was not, nor had there ever been a readily identifiable "certain collateral note * * * held by The Union Trust Company." In actuality, Mr. Walger's indebtedness at that time totalled $89,900.00, and while the record is not clear on the point, it must have been evidenced either by a number of notes in an aggregate principal amount of $91,900.00, against which $2,000.00 had been paid, or by a single note for $89,900.00, the last in a long series given in substitution for others. It is clear from the record, however, that at no time was the indebtedness exactly $40,000.00.

Nothing could be clearer than that it was the intention of the parties as expressed in Paragraph 6. (f) of the agreement of property settlement that Mr. Walger was to have a first call on $40,000.00 of the net proceeds of sale of the Lutherville property in order that he could recapture his individual investment in it. This was consistent with the concept that "the proceeds of said loan were used in the construction of the house * * * and that said obligation shall be paid from the gross proceeds of sale and thus treated as in the nature of an equitable mortgage against the property * * *." The practical effect of this was to give Mr. Walger by contract a preferential status in the distribution of the sale proceeds. The argument that this obligation was extinguished when the Union Trust Company indebtedness was satisfied by a borrowing from The Equitable Trust Company is too tenuous to be persuasive. It is too late in the day to be swayed by an argument that the clear and unambiguous language of an agreement should give way to what one of the parties thought the agreement meant or intended it to mean, *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 261 Md. 379, 383, 275 A. 2d 487 (1971) ; *Ray v. Eurice*, 201 Md. 115, 127, 93 A. 2d 272 (1952), particularly in an instance such as this where the parties were represented in their negotiations by competent and experienced counsel.

Mrs. Sachse's next point is that if Mr. Walger's preferential status with regard to the sale proceeds is to be recognized, she is at least entitled to a credit of one-half of $10,300.00, the amount by which the unpaid balance of $89,900.00 owed the Union Trust Company when the agreement was signed had been reduced by the date of settlement when The Equitable Trust Company was owed $79,600.00. Mrs. Sachse reads the phrase "the entire balance remaining at the time of sale, principal and interest * * * not to exceed, however, the sum of Forty Thousand ($40,000.00) Dollars" as meaning that the $40,000.00 figure was to be reduced by any payments made by Mr. Walger in reduction of his total indebtedness.

The court below did not see it quite that way, and neither do we. While the agreement might have been more artfully drawn, it seems to be conceded that Mrs. Sachse knew or might have suspected that Mr. Walger's obligation on the demand loan exceeded $40,000.00 on the day when the agreement was signed, although she may not have known the precise amount of the excess borrowings. We think the intention of the parties as expressed in the agreement was that the amount of Mr. Walger's indebtedness was to be satisfied from the proceeds of sale but only to the extent that the aggregate sum did not exceed $40,000.00. The limitation which was imposed was obviously designed to protect Mrs. Sachse against the possibility that the indebtedness was in an amount in excess of the ceiling of $40,000.00. The floor was "the entire balance remaining at the time of sale" and might only have become operative, if at all, had the loan balance been less than $40,000.00.

While the situation may have been clouded by the reference to an apparently non-existent "certain collateral note", it seems palpably clear that the parties recognized that Mr. Walger had put $40,000.00 of his own funds into the construction of the house; that this amount was to constitute a first charge against the proceeds of sale; and that the only limitation was that Mr. Walger

was to receive no more than $40,000.00, even if his obligation were in excess of that amount at the time of sale.

Mrs. Sachse's final claim is for reimbursement of monthly payments of interest on and in reduction of the principal of the $25,000.00 mortgage during the time she lived in the Lutherville house. It will be recalled that Paragraph 5 of the agreement provided that Mr. Walger would pay to his wife, for her maintenance and support, until her death or remarriage, the sum of $550.00 per month, and continued,

> "* * * subject, however, to credits for payment of mortgage installments and real property taxes on the property 1513 Sherbrook Road, Lutherville, Baltimore County, Maryland, and home owner's insurance premiums thereon, as hereinafter set forth."

Paragraph 6. (b) of the agreement required Mr. Walger, so long as Mrs. Walger occupied the house, to make the mortgage payments and to pay taxes and insurance premiums,

> "* * * provided, however, that he shall receive credit therefor in his alimony payments to the Wife, which said payments shall be reduced on a monthly basis by the equivalent of 1/12th of the annual total of the mortgage payments, real property taxes and home owner's insurance premiums."

The argument Mrs. Sachse makes begins with the assertion that a tenancy by the entirety between husband and wife becomes a tenancy in common, in the event of divorce, *Tucker v. Dudley,* 223 Md. 467, 469, 164 A. 2d 891 (1960). The next step in her logic is that one tenant in common who discharges a lien or encumbrance is entitled to contribution from his co-tenant, relying on *Hogan v. McMahon,* 115 Md. 195, 201, 80 A. 695 (1911).

What this argument overlooks is the fact that by agreement, the parties altered the normal responsibilities and obligations of co-owners. It was clearly Mr. Walger's

duty to pay the property expenses, and he was authorized to claim a "credit" for these payments, which amounted to $326.00 per month.

It is true that this had the effect of reducing Mrs. Walger's maintenance and support payments to $124.00 per month, but this worked no gross inequity. Mrs. Walger lived in the house rent free; she was receiving monthly child support payments amounting to $700.00, and her one-half interest in the equity increased as each payment was made in reduction of the principal amount of the debt. The provisions of the property settlement agreement regarding the treatment to be accorded property expenses were clear and unambiguous, and were performed by Mr. Walger according to their tenor.

*Judgment affirmed, costs to be paid by appellant.*