# BILLMYRE *v.* SACRED HEART HOSPITAL OF THE SISTERS OF CHARITY, INC. ET AL.

[No. 101, September Term, 1974.]

*Decided February 6, 1975.*

The case was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Gary A they* and *John C. Sullivan* for appellant.

*Hugh A. McMullen,* with whom were *Geppert, McMullen & Paye* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Mrs. Mary E. Billmyre brought suit in the Circuit Court for Allegany County against Sacred Heart Hospital of the Sisters of Charity, Inc. (the Hospital), in which she sought to recover $10,037.48 in damages for the breach of an employment contract.[1] From a judgment in the Hospital's favor for costs, Mrs. Billmyre has appealed.

By letter agreement dated 15 October 1972, Mrs. Billmyre was employed as coordinator-instructor in the Hospital's School of Practical Nursing. The agreement is set out below:

> "It is hereby agreed by and between Sacred Heart Hospital School of Practical Nursing, Cumberland, Maryland and Mary E. Billmyre, R.N., that the said employee shall be and is hereby employed in the School of Practical Nursing as Coordinator/1/4-Instructor/3/4. The salary of said certificated employee shall be fixed by the Sacred Heart Hospital and the State Department of Education — Manpower Development.[2]
>
> "And it is further agreed that the said certificated employee will not vacate the position to

---

1. The suit against the Hospital's Director of Nursing Service, also joined as a defendant, was dismissed at the close of the case. Mrs. Billmyre makes no point of this.

2. It should be noted that the agreement contained no specific provision regarding compensation. Mrs. Billmyre testified that she was paid $4.58 per hour, and received Blue Cross-Blue Shield and Major Medical coverage costing $407.08 per year at no cost to her.

which assigned during the school year, except in case of emergency.

"And it is further agreed that the said certificated employee will perform all duties required by the Maryland State Board of Examiners of Nurses.

"And it is further agreed that either of the parties to this contract may *terminate it at the end of the school year by giving notice in writing to the other not later than May 1 of such school year.*

"And it is further agreed that if the certificated employee named herein wishes to vacate his or her position thirty days notice in writing shall be given Sacred Heart Hospital except in case of emergency of which Sacred Heart Hospital shall judge.

*"This contract shall continue for the duration of one year subject to the aforegoing conditions. Sacred Heart Hospital may suspend or dismiss the employee at any time in accordance with Sacred Heart Hospital Personnel Policy #9.*

"And it is further agreed that the certificated employee shall perform his or her duties in keeping with the fundamental philosphy of Sacred Heart Hospital and shall abide by the policies set forth by the administration of said institution.

"This contract shall automatically terminate if the employee ceases to hold a professional certificate as set forth by the State Board of Examiners of Nurses in the State of Maryland.

"This said certificated employee on his or her part hereby accepts said appointment to take effect on the 6/5 day of 72, 19_____.

"Date of signing this contract 10/15, 1972." [3] (Emphasis supplied.)

---

**3.** There was testimony that the agreement was modeled on the tenure agreement adopted by the State Board of Education. *See* Halsey v. Board of Education of Garrett County, Maryland, 273 Md. 566, 331 A. 2d 306 (1974). It was executed in October in response to a State Board of Examiners of Nurses' recommendation that employment agreements be in writing.

Mrs. Billmyre was on a 30-day leave of absence for surgery in April-May, 1973, and upon her return received the following letter, written on 18 May, from Sister Mary Agnes, the Hospital's Director of Nursing Service:

"This is to confirm the conversation that I had with you in my office as well as the telephone conversation that I had with you. I do not think it wise for you to continue in the Practical Nurse Program at the present time. I presented to you three choices. I suggested:

"1. You take an educational leave and better prepare yourself for teaching, which you say you enjoy.
"2. You return to staff nursing.
"3. That you resign.

"I would like an answer regarding your choice by Monday, May 21.

"You may return to the school until graduation, after you have been cleared by the Emergency Room doctor, according to the hospital policy.

"I feel that this decision has been made in your best interest."

The principal thrust of Mrs. Billmyre's argument is that the contract must be construed as renewing itself for another year in the absence of notice from either party prior to 1 May.

The trial court found the contract to be sufficiently ambiguous to permit introduction of testimony as regards the intention of the parties, and concluded that the parties intended the contract to be for one year only. As a consequence, in entering judgment for the Hospital, it was unnecessary to consider Mrs. Billmyre's duty to mitigate damages.

We simply do not share this view. The contract may not be the epitome of skilled draftsmanship but it is certainly not ambiguous. In tracking the language of the State Board of

Education contract which is automatically renewed for a second year in the absence of notice, the parties may have unwittingly embraced a Procrustean resolution of their purpose — but there can be no doubt as to what meaning should be given the sentence

> "And it is further agreed that either of the parties to this contract may terminate it at the end of the school year by giving notice in writing to the other not later than May 1 of such school year."

The later statement,

> "This contract shall continue for the duration of one year *subject to the aforegoing conditions.*" (Emphasis supplied:)

does not modify the earlier: it is expressly subordinate to it.

We have long since passed the point in time where the clear and unambiguous language of an agreement will give way to what the parties thought the agreement meant or intended it to mean, *Sachse v. Walger*, 265 Md. 515, 520, 290 A. 2d 785, 788 (1972); *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 261 Md. 379, 383, 275 A. 2d 487, 489 (1971); *Ray v. Eurice*, 201 Md. 115, 127, [*Ray v. William G. Eurice & Bros.*,] 93 A. 2d 272, 278-79 (1952). Where a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed, *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 350, 322 A. 2d 866, 873 (1974); *Kasten Constr. Co. v. Rod Enterprises, Inc.*, 268 Md. 318, 328, 301 A. 2d 12, 18 (1973); *Little v. First Federated Life*, 267 Md. 1, 6, 296 A. 2d 372, 375 (1972); *Kermisch v. Savings Bank of Baltimore*, 266 Md. 557, 560-61, 295 A. 2d 776, 778 (1972); *Devereux v. Berger*, 253 Md. 264, 269, 252 A. 2d 469, 471 (1969). When the language of a contract is clear, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant, *Sachse v. Walger* and *U.S.I.F. Triangle v. Rockwood Dev. Co.*, both *supra; Seldeen v. Canby*, 259 Md.

526, 531, 270 A. 2d 485, 488 (1970); *Katz v. Pratt Street Realty Co.*, 257 Md. 103, 120, 262 A. 2d 540, 548 (1970); *Ray v. Eurice, supra.* And *see Monticello v. Monticello,* 271 Md. 168, 173, 315 A. 2d 520, 522-23, *cert. denied,* 419 U. S. 880 (1974). Chief Judge Brune summarized the matter for the Court in *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958):

> "As we turn to the authorities, we may note first that the theory of 'objective law' of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272. '* * * where there has been an integration of an agreement, those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective. * * * *Williston* * * * Sec. 94, page 294, says: "It follows that the test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." ' *Ray v. Eurice, supra,* p. 127."

There was testimony that the Hospital's School of Practical Nursing had been funded by federal grants, routed through the State Department of Education, and that funding was for a one-year period and renewed annually. The difficulty with the letter agreement was that it was not tailored to meet the realities of the supportive program. To make it fit would require us to write a new contract for the parties, which we cannot do, *Kasten Constr. Co. v. Rod Enterprises, Inc., supra,* 268 Md. at 330, 301 A. 2d at 19.

Mrs. Billmyre challenges the trial court's finding of fact that her conduct justified her dismissal, as permitted by the letter agreement, "in accordance with Sacred Heart Hospital Personnel Policy #9" which in turn contemplated "that counseling and written warnings shall precede discharge, except in instances where the seriousness of the offense warrants immediate discharge."

The trial court found as a fact that there was no question as to Mrs. Billmyre's competency as a nurse; that her performance evaluation in February, 1973 was generally satisfactory.

The finding to which Mrs. Billmyre takes exception is quoted from the court's opinion:

"Said policy in Sec. II thereof states that counseling and written warnings shall precede discharge except in instances where the seriousness of the offense warrants immediate discharge. The Court finds as a fact, denied by the Plaintiff, that the Plaintiff dispatched two staff members to Frostburg to conduct a surveillance of the residence of a student who had reported by telephone that she was sick. The Director, Sister Margaret James, upon learning of this episode considered the matter to be an unwarranted invasion of privacy requiring the removal of the Plaintiff from the teaching staff, this decision was communicated to the Plaintiff upon her return from the sick leave in May and also to Sister Mary Agnes, Director of Nursing Service. No reason exists for the Court to substitute its judgment, if indeed it were different, for that of the Director who acted within her supervisory powers and consistent with Personnel Policy No. 9."

There was a great deal of testimony about an incident in which it was claimed that Mrs. Billmyre sent the secretary and an instructor at the School of Practical Nursing to the

home of one of the students, whom Mrs. Billmyre suspected of truancy.[4]

The difficulty about the finding is that Sister Margaret James, the administrator of the Hospital, steadfastly maintained that Mrs. Billmyre had never been discharged; instead, that a policy decision had been made that Mrs. Billmyre should not continue in the program. Sister Mary Agnes, the director of Nursing Service, who was Mrs. Billmyre's immediate superior, while more specific about what she regarded as Mrs. Billmyre's deficiencies, also took the position that Mrs. Billmyre had never been discharged. Although Sister Mary Agnes characterized the incident regarding the student as "an invasion of privacy" she did not think it justified Mrs. Billmyre's dismissal. In point of fact, the incident, which took place in early April, was not even discussed with Mrs. Billmyre until sometime in May. Usually a right to rescind or cancel must be exercised promptly after discovery of the facts from which it arises. *See Pumphrey v. Pelton,* 250 Md. 662, 666-68, 245 A. 2d 301, 303-05 (1968); *National School Studios, Inc. v. Mealey,* 211 Md. 116, 129-32, 126 A. 2d 588, 595-97 (1956). *See also Michael v. Towers,* 253 Md. 114, 117-18, 251 A. 2d 878, 880-81 (1969); *Coopersmith v. Isherwood,* 219 Md. 455, 462-63, 150 A. 2d 243, 247-48 (1959); 17 Am.Jur.2d *Contracts* § 510, at 992-94 (1964).

Rule 886 provides that when a case is tried below without a jury, we will review the case on both the law and the evidence, but that the judgment of the lower court will not be set aside on the evidence unless clearly erroneous. This happens to be one of the rare instances which calls for intervention on appeal. There is simply no evidence that an effort was made to terminate Mrs. Billmyre's employment in the manner contemplated by Personnel Policy No. 9. Rather, a reading of the record would support the conclusion that had been reached not to continue Mrs. Billmyre's employment in the program because of her lack of

---

4. Since students were being paid to attend the school, Mrs. Billmyre was endeavoring to ascertain whether an excused absence was bona fide.

qualifications, particularly since the coordinator was supposed to have a bachelor's degree (which had been waived for 1972-73) and would be required to have a master's degree in 1975. This may well account for the educational leave option accorded by the 18 May 1973 letter.

Mrs. Billmyre's final point is that the trial court erred in refusing to admit evidence that she had been awarded unemployment benefits by the State Employment Security Administration. In the present posture of the case, we need not reach this point. Whether Mrs. Billmyre did or did not receive such benefits is germane only to the issue whether she was discharged for misconduct.[5] In view of our conclusion that she was not, the issue loses whatever significance it may have had.

For the reasons stated, we shall reverse the judgment entered below and remand the case for a determination of the amount of damages Mrs. Billmyre sustained as a result of the breach of her employment contract by the Hospital, together with a consideration of the extent of her obligation to mitigate damages, *Volos, Ltd. v. Sotera,* 264 Md. 155, 174-76, 286 A. 2d 101, 111-12 (1972); *Atholwood Development Co. v. Houston,* 179 Md. 441, 445-47, 19 A. 2d 706, 708-09 (1941) and *compare Hamill v. Foute,* 51 Md. 419 (1879) *with Flickema v. Henry Kraker Co.,* 252 Mich. 406, 233 N. W. 362 (1930). *See* Annot., 44 A.L.R.3d 629 (1972); Annot., 22 A.L.R.3d 1047 (1968); Annot., 72 A.L.R. 1049 (1931); 5 A. Corbin, *Contracts* § 1095, at 514-21 (1964); 11 S. Williston, *Contracts* §§ 1358-59, at 301-12 (3d ed. 1968).

> *Judgment reversed; case remanded for further proceedings conformable to the views herein expressed; costs below and on appeal to be paid by appellee, Sacred Heart Hospital of The Sisters of Charity, Inc.*

---

5. In fact, she was awarded benefits from 24 October 1973, if eligible.