WILLIAM GEORGE LaCHANCE *v.* GEORGINA C. LaCHANCE

[No. 154, September Term, 1975.]

*Decided November 5, 1975.*

The cause was argued before ORTH, C. J., and GILBERT and MELVIN, JJ.

*Mercedes C. Samborsky* for appellant.

*Joel H. Pachino*, with whom were *George D. Edwards* and *Friedman, Pachino & Friedman* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

The martial attitude of William George LaChance (Husband) and Georgina C. LaChance (Wife) did not end with the dissolution of their marital status. The war between them over their domestic difficulties, marked by numerous skirmishes, both judicial and extra-judicial, could have ceased upon the signing of a decree on 14 January 1975 by the chancellor in the Circuit Court for Baltimore County.[1] Each could have withdrawn from the field of battle without dishonor; neither was obliged to surrender unconditionally. Both obtained what they primarily sought — the termination of their status as husband and wife by the grant of a divorce *a vinculo matrimonii* on the ground of voluntary separation. Code, art. 16, § 24. The decree also determined the custody of their minor children, provided for the support of the children, and bestowed visitation rights. It disposed of the property of Husband and Wife as they had previously

1. LaChance v. LaChance, Docket E. H. K. Jr., Liber 101, folio 251, no. 78874. Jenifer, J. heard the matter. Proctor, J. issued the decree. Maryland Rule 528.

agreed. And it further ordered that Husband pay Wife $20 a week "not to exceed a period of two years accounting from December 20, 1974." It was the last that rankled Husband. Not that he deemed the amount unreasonable considering her need and his ability to pay. It was simply, it seems, that he did not want to pay her anything at all. So husband, not content to live in peace, renewed hostilities, this time on the appellate level. Wife did not counterattack by way of cross-appeal, but she defended her position resolutely.

The decree was the result of a Supplemental Bill of Complaint filed by Wife on 2 October 1974 in the action then pending. By it she sought a divorce *a vinculo matrimonii* on the ground of voluntary separation, and in it she prayed, among other relief sought, that she "be awarded a reasonable sum as permanent alimony." Courts Art. § 3-603. Answering the Supplemental Bill, Husband alleged: "By paragraph 8 of the Separation Agreement between the parties [Wife] waived her right to claim technical alimony, the only type of alimony this Court has jurisdiction to award, by agreeing to non-technical alimony, if she is so entitled." [2] The precise language of the decretal order for support of Wife read thus:

"ORDERED that the said WILLIAM GEORGE LaCHANCE also pay unto the said GEORGINA C. LaCHANCE, the sum of Twenty Dollars ($20.00) per week as alimony, also payable bi-weekly [3] at the rate of Forty Dollars ($40.00) and payable through the Probation Department of this Honorable Court, and not to exceed a period of two years accounting from December 20, 1974, all subject to the further order of the Court in the premises, . . . ."

The decree contained a further order "that the pertinent terms of the agreement by and between the parties hereto

2. Husband filed a Supplemental Cross-Bill of Complaint for an absolute divorce on the ground of voluntary separation in which he sought custody of the children. Wife answered praying that it be dismissed. The decree adjudged, ordered and decreed that Wife and Husband "be and they are hereby divorced a vinculo matrimonii. . . ."

3. Support for the children was ordered to be paid bi-weekly.

dated September 27, 1973, be and they are hereby approved and made a part hereof as if fully set forth herein, . . . ."

A statement filed on appeal pursuant to Maryland Rule 1026, § g, described the Agreement:[4] "The Agreement contained the facts of the marriage, the date of the separation, the voluntariness of the separation, the names, ages and other provisions relating to the custody and support of the minor children of the parties and the settlement of the property rights of the parties." It quoted paragraph 8 of the Agreement:

> "It is agreed between the parties hereto that the Wife hereby reserves her claim to alimony, maintenance and support. The Wife further agrees that she will not assert said claim until one of the parties hereto files action for an absolute divorce, and if so filed for a period of time not to exceed two (2) years."

An executed original of the Agreement, received in evidence, shows on its face that the concluding phrase of paragraph 8 — "and if so filed for a period of time not to exceed two (2) years" — was added after the Agreement was first typed. The initials of Wife and the initials of Husband are subscribed at the end of the phrase to attest its addition.[5]

Husband argues on the premise that the chancellor awarded non-technical alimony and therefore erred by directing payment of an amount "not specifically agreed between the parties hereby modifying the contractual agreement of the parties as to the amount of alimony." It is his position, as best we understand it, that Wife, by agreeing to limit the period during which she was to receive support, waived any right to technical alimony, and by failing to designate an agreed amount to be paid for her support and maintenance, precluded the court from setting an amount in

---

4. The statement erroneously gave the date of the Agreement as 9 September 1973.

5. Husband and Wife agreed in oral argument before us that the added phrase referred to refer to the period for payments to Wife and not to a time within which an action for an absolute divorce was to be filed.

the decree as non-technical alimony. Wife, claiming that although technical alimony may not be enlarged upon, it may be restricted, contends that it was indeed technical alimony the chancellor awarded, and that he had authority to award it for a period of only two years. We are not in complete accord with the position of either Husband or Wife.

Powers, J., speaking for this Court in *Simpson v. Simpson*, 18 Md. App. 626 (1973), after carefully considering the cases of the Court of Appeals concerning the question whether money allowance for a wife's support was alimony or not, at 628-629, concisely summarized the law as established:

"1. Alimony is a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance. [6]

a. It must terminate on the remarriage of the wife.

b. It must terminate on the death of the wife.

c. It must terminate on the death of the husband.

d. If the parties have entered into an agreement providing for payments which meet the required characteristics of alimony, the court may adopt the agreement in ordering the payment of alimony.

e. Alimony ordered by the court is always subject to reconsideration and modification by the court in the light of changed circumstances.

---

6. Judge Powers noted: "Whether a wife may be ordered to pay alimony to a husband has not been decided by an appellate court in this State." 18 Md. App. at 628, n. 1. It has now been decided by legislative enactment. Code, art. 16, § 3 formerly provided: "In cases where a divorce is decreed, alimony may be awarded." Acts 1975, ch. 332, effective 1 July 1975 added "to either spouse" at the end of the section. We note, however, that Code, art. 16, § 5 (a), proscribing the award of alimony "unless it shall appear from the evidence that the wife's income is insufficient to care for her needs", has not been amended so as to apply to an award of alimony to a husband. But see Code, art. 16, § 5A concerning award of costs and counsel fees in proceedings relating to children.

f. Payment of alimony may be enforced by the court by the exercise of its contempt power including attachment and imprisonment of the person.

2. If the parties have entered into an agreement providing for payments which do not meet all of the requirements of alimony, the court may nonetheless incorporate all or part of the agreement in its decree. However, the obligation to pay rests upon the agreement of the parties, and does not become alimony.

a. Such payments may not be modified by the court in the absence of collusion, mistake or fraud. [7]

b. Such payments do not take the character of alimony because they are described as alimony.

c. Such payments do not take the character of alimony because the parties by their agreement or the court in its decree attempt to give the court or reserve continuing jurisdiction to modify the payments.

d. Such payments, if approved by a decree of the court, may be enforced by the court by the exercise of its contempt power, including attachment and imprisonment of the person." [8]

---

7. Acts 1975, ch. 849, amended art. 16, § 28, to ease the harsh rule found existent in *Simpson*. Section 1 of the Act provided that the court has the right to modify the agreement in respect to support, maintenance, property rights or personal rights between the husband and wife regardless of the manner in which the provisions are expressed or stated unless the provisions of the agreement specifically state that they are not subject to any court modification. Section 2 further enacted that the Act "shall not be construed or interpreted to have any effect upon or application to any deed, agreement, or settlement, or any event or happening occurring prior to the effective date of this Act." Section 3 made the effective date 1 January 1976.

8. Note 1a at this point read:

"By amendment in 1950 of Section 38 of Article III of the Maryland Constitution payments for support provided in an agreement approved by a decree of court are, along with alimony,

It is manifest that alimony is *sui generis*. A money allowance payable to a wife must meet the definition of alimony precisely or it is not alimony. The elements of alimony may not be enlarged, and they may not be diminished. Neither more nor less than alimony is alimony. What constitutes alimony depends, not upon what the money allowance is called, but upon who is to receive it, who is to pay it and how long it is to be paid. The payment of alimony can no more be extended beyond the marriage or death of the former wife than it can be limited to a period short of the happening of those events.[9]

By clause 8 of the Agreement, Husband and Wife agreed that Wife reserved her "claim to alimony, maintenance and support." Wife agreed, (1) not to assert such claim until either Husband or Wife filed an action for an absolute divorce, and (2) if so filed, she would not seek to have such allowance paid to her for longer than two years. Paragraph 8 is notable first, by the omission of a designated amount to be paid Wife by Husband, and, second, by the addition of the clause limiting the period for which she is to receive the allowance.

We believe that when Wife agreed to restrict whatever allowance was paid her by Husband to a period of time not to exceed two years, she thereby relinquished any claim to alimony. As we have seen, contrary to Wife's view, such a limitation is not consistent with alimony, so that the addition of the phrase limiting the period of payment negated the reservation of alimony. This leaves paragraph 8 reading that Husband and Wife agree that Wife reserves her

defined as not constituting a debt within the constitutional prohibition against imprisonment for debt. See Speckler v. Speckler, 256 Md. 635 261 A. 2d 466, Soldano v. Soldano, 258 Md. 145, 265 A. 2d 263 and cases there cited."

9. "Technical alimony" and "non-technical alimony" are phrases used by the courts on occasion, and, we believe, tend to lead to confusion. The former is alimony. The latter is not alimony because it does not meet the strict test required of alimony. Although a money allowance not containing all the incidents of alimony may be incorporated in a decree of the court and to that extent may be deemed a judicial award, such allowance merely reflects the agreement of the parties and is in no sense "alimony". The use of the word "alimony", no matter how qualified, to describe such payments, is a misnomer.

claim to maintenance and support, as distinguished from alimony. The two qualifications agreed to by Wife remain in full force and effect, however, with regard to maintenance and support. She shall not seek maintenance and support until one of the parties files an action for an absolute divorce, and, in any event, she shall not seek payment of maintenance and support for a period in excess of two years. Wife abided by the first qualification not to seek an allowance for her support until she or Husband filed an action for an absolute divorce. But her supplemental bill of complaint did not conform with the second qualification, for she requested that she "be awarded a reasonable sum as permanent alimony." This, under our construction of the Agreement, she had effectively waived. On the other hand, she also asked in her bill that she "may have such other and further relief as the nature of her cause may require." We think that this prayer would enable the chancellor to incorporate pertinent parts of the Agreement into his decree. Code, art. 16, § 28; *Jackson v. Jackson,* 14 Md. App. 263 (1972). The question is what did Husband and Wife agree upon as to Wife's maintenance and support.

By the express terms of the Agreement, as we have indicated, Wife had a right to claim maintenance and support with the payment thereof restricted to two years. No amount, however, was specified. Husband claims that the chancellor was precluded from setting an amount. Husband reasons that the chancellor could incorporate in his decree only what the contractual agreement between Husband and Wife explicity provided. He could not modify that contract. See *Eigenbrode v. Eigenbrode,* 19 Md. App. 597 (1974). The chancellor could not, according to Husband, cure the failure to specify an amount by setting a figure to be paid. We reject this argument. Under Husband's interpretation, paragraph 8, as finally agreed upon, would be utterly meaningless. Under his construction, the parties agreed that a claim to alimony was reserved by Wife, but what was reserved was a claim to nothing at all. We do not believe that this result was what Husband and Wife intended, and we cannot see an intention in the language of

the Agreement that Wife was to receive nothing for a period not to exceed two years. This would be grossly unfair. Wife should not be deprived of maintenance and support, to which she may be otherwise entitled, by a dubious construction of a contractual provision. *Harris v. Wye Tree Experts, Inc.*, 273 Md. 454, 458 (1975). The rule is that contracts should receive a reasonable construction rather than one which produces an unreasonable or harsh result. Id., at 458, citing *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 357 (1974); *Garfinkel v. Schwartzman*, 253 Md. 710, 720 (1969); *Cadem v. Nanna*, 243 Md. 536, 544 (1966); *Baltimore City v. Industrial Electronics, Inc.*, 230 Md. 224, 229 (1962). We think it manifest that the parties, by agreeing that Wife reserved "her claim" to maintenance and support, and by declaring that the clause was not to be asserted until an action for an absolute divorce was filed, contemplated the intervention of the court in which the action was instituted to establish, in its sound discretion, the sum to be paid. This would enable the amount established to be compatible with the situation of the parties at the time the claim reserved was made. In arriving at an amount, the discretion of the court would be soundly exercised if the court were guided by the same basic factors as in an award of alimony, that is the ability of the husband to provide support and the wife's need for it. See *Willoughby v. Willoughby*, 256 Md. 590 (1970). The language of paragraph 8 is susceptible of a clear and definite understanding, and there is no intimation of fraud, duress or mutual mistake. Thus, the true test of what was meant is what a reasonable person in the position of the parties would have thought it meant. *Billmyre v. Sacred Heart Hosp.*, 273 Md. 638, 642-643 (1975); *Ray v. Eurice*, 201 Md. 115, 127 (1952). We believe that a reasonable person in the position of Husband and Wife would have thought that paragraph 8 meant that the chancellor presiding in the court in which the action for an absolute divorce was filed, was, in his sound discretion, to fix the amount to be paid by Husband to Wife for her maintenance and support, and that such payment was to have the incidents of alimony except that it was not to be paid for longer than two years. And, as the parties

contemplated that the court would fix such sum as was reasonable considering the situation of the parties, they also contemplated that the court would have continuing jurisdiction over the award for a period not to exceed two years, so that the amount of the allowance could be changed, during that period, to be compatible with a changed situation of the parties. In short, the allowance for her support was to have all the incidents of alimony except that it was in no event to continue for more than two years.

We hold:

(1) Regardless of being characterized as "alimony", the award of $20 ordered in the decree of 14 January 1975 to be paid by Husband to Wife was not alimony but was an allowance for support of the wife arising under the contractual agreement of 27 September 1973;

(2) The allowance for support was to terminate:
    (a) on the remarriage of Wife;
    (b) on death of Wife;
    (c) on death of Husband;
    (d) at the expiration of two years from 20 December 1974;
    whichever first occurred.

(3) For a period of two years, unless sooner terminated, the allowance for support was subject to the further order of the court.

The decretal order concerning the maintenance and support of wife is modified by deleting therefrom the words "as alimony", and, as modified, is affirmed.

> *Decree of 14 January 1975 modified in accordance with this opinion and as modified is affirmed; costs to be paid by appellant.*